UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-60891-Civ-AHS

**INTER-COASTAL WATERWAYS, LLC,**

        **Plaintiff,**

v.

**TRADESTATION SECURITIES, INC.,
and DOE DEFENDANTS 1-10,**

        **Defendants,**

      and

**FINANCIAL INDUSTRY REGULATORY
AUTHORITY, INC.**

        **Nominal Defendant.**
_____/

**FINRA'S MOTION TO DISMISS**

Nominal Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"),[1] respectfully moves to dismiss the Complaint [ECF No. 1] pursuant to Federal Rules of Civil Procedure 12(b)(1), (2) and (6). In support of its motion, FINRA states as follows:

---

[1] FINRA was previously known as the National Association of Securities Dealers ("NASD").

## INTRODUCTION AND RELEVANT BACKGROUND

Plaintiff alleges a racketeering scheme against a broker-dealer (TradeStation Securities, Inc. ("TradeStation")), and ten unnamed defendants related to a company-related action[2] by Meta Materials, Inc. ("Meta"), a party not before the Court.  In the Complaint, Plaintiff does not allege any misconduct by FINRA, and it seeks no relief from FINRA.  Instead, Plaintiff names FINRA only as a "Nominal Defendant," but Plaintiff fails to establish that FINRA's presence in this case is required to obtain relief.  Further, because the only conduct FINRA is alleged to have engaged relates to its regulatory activities, any potential claims against FINRA are barred by regulatory immunity.  Finally, this Court lacks personal jurisdiction over FINRA.  For these reasons, Plaintiff's Complaint must be dismissed as to FINRA.

  A.  **FINRA's Role in Regulating the Securities Industry**

FINRA is a private, not-for-profit Delaware corporation and self-regulatory organization ("SRO") registered with the Securities and Exchange Commission ("SEC") as a national securities association pursuant to the Maloney Act of 1938. 15 U.S.C. §§ 78o- 3, *et seq.,* amending the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.* ("Exchange Act"). As part of the Exchange Act's comprehensive plan for oversight of the securities industry, FINRA aids in the regulation of the securities markets. *See* 15 U.S.C. §§ 78o-3, *et seq.; Desiderio v. NASD,* 191 F.3d 198, 201 (2d Cir. 1999). Through the Exchange Act, Congress "established a system of 'cooperative regulation,'" in which it imposed duties upon SROs to conduct day-to-day regulation of the national securities markets. *See Sparta Surgical Corp. v. NASD, Inc.,* 159

---

[2]  Company-related actions are actions taken by publicly-traded companies and include, for example, mergers, changes to the name of an issuer, a new or modified trading symbol, a dividend or other distribution, and a stock split. SEC Release No. 34-62434, 75 Fed. Reg. at 39604.

F.3d 1209, 1210-13 (9th Cir. 1998), abrogated in part on other grounds by *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning,* 578 U.S. 374 (2016) (citation omitted).

The Exchange Act requires FINRA to establish rules "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in securities, . . . and, in general, to protect investors and the public interest." 15 U.S.C. § 78o-3(b)(6). The Exchange Act also mandates that FINRA investigate and discipline its members and their associated persons for violating FINRA rules or the federal securities laws. *Id.* § 78o-3(b).

FINRA exercises its regulatory authority in accordance with the requirements of the Exchange Act and subject to oversight by the SEC. *Empire Fin. Group v. FINRA*, 2009 WL 10644856, at *7 (S.D. Fla. Jan. 15, 2009) ("[U]nder the comprehensive regulatory scheme for the securities industry that was established by Congress, FINRA's performance of its responsibilities is subject to the strict, on-going oversight of the SEC."); *see also Sparta Surgical,* 159 F.3d at 1214.  FINRA is statutorily obligated to comply with the Exchange Act, the SEC's rules and regulations, and its own rules. *See* 15 U.S.C. § 78s(g). The SEC has "broad supervisory responsibilities over [SROs]" and correspondingly broad power to enforce their compliance with these obligations. *Austin Mun. Secs., Inc. v. NASD, Inc.*, 757 F.2d 676, 680 (5th Cir. 1985). If FINRA were to violate the Exchange Act, federal regulations, or its own rules, the SEC could suspend or revoke FINRA's registration as an SRO, limit FINRA's activities, functions, and operations, or impose other sanctions. *See* 15 U.S.C. § 78s(c), (h)(1)-(4). Thus, "Congress has vested in the SEC the obligation of ensuring that FINRA performs its statutory responsibilities." *Empire Fin. Group*, 2009 WL 10644856, at *20.

### B. FINRA's Regulation of the Over-The-Counter Market

FINRA does not own or operate a stock market. It does not execute securities transactions on behalf of customers. FINRA does not issue, cancel, settle, or clear securities that are traded in the national securities markets. Instead, as an SRO, FINRA regulates its members that trade and quote securities in the national securities markets to ensure they comply with FINRA rules, federal securities laws, and the rules and regulations thereunder.

Equity securities that are not listed on a national securities exchange may be traded and quoted by FINRA members in the over-the-counter ("OTC") market ("OTC equity securities"). FINRA performs several regulatory functions in the OTC market, including maintaining a symbols directory for OTC equity securities, *see https://otce.finra.org/otce/symbol-directory,* and adopting rules regarding quoting and trading in OTC equity securities, *see* FINRA Rule 6400 Series. The FINRA rules, and amendments thereto, that are relevant to the issues presented in this case were approved by the SEC. *See, e.g.,* SEC Release No. 34-54952, 71 Fed. Reg 78242 (Dec. 18, 2006) (SEC order approving amendments to FINRA Rule 6440, formerly NASD Rule 6660); SEC Release No. 34-62434, 75 Fed. Reg. 39603 (July 1, 2010) (SEC order approving the adoption of FINRA Rule 6490).

### C. The Meta Company-Related Action

In July 2022, Meta filed a registration statement with the SEC for Next Bridge Hydrocarbons, Inc. ("Next Bridge") common stock. Compl. ¶17. Next Bridge was a wholly-owned subsidiary of Meta, and Meta held all of the common stock issued by Next Bridge (the "Next Bridge Shares"). Compl., Ex. 11 at page 2 of 9 [ECF No. 1-11], FINRA's *Investor Insights* article. In the registration statement, Meta explained that holders of its Series A

Shares would receive Next Bridge common stock (the "Meta Company-Related Action").[3] Compl. ¶¶16-18. On December 14, 2022, the distribution date set by Meta, the Meta Company-Related Action was finalized, Meta cancelled the Series A Shares, and Next Bridge common stock was distributed, which recordholders of the Series A Shares as of December 12, 2022, were entitled to receive on a one-to-one basis.  Compl. ¶¶16-18; *see also* Next Bridge Press Release (Dec. 20, 2022).[4]

FINRA was not a party to the Meta Company-Related Action. Instead, FINRA's awareness of the Meta Company-Related Action arose solely from FINRA's regulatory activities related to the OTC market. Exchange Act Rule 10b-17 requires an issuer of publicly-traded securities, such as the Series A Shares, to notify FINRA of certain company-related actions. 17 C.F.R. § 240.10b-17; *see also* FINRA Rule 6490;[5] SEC Release No. 34-62434, 75 Fed. Reg. at 39603 ("FINRA reviews and processes requests to announce or publish certain actions taken by issuers of OTC Securities."); FINRA Reg. Notice 10-38 (Sept. 27, 2010) (FINRA Rule 6490 "codifies the requirements in [Exchange Act] Rule 10b-17 for issuers of a class of publicly trading securities to provide timely notice to FINRA of certain" company-related actions.).[6] FINRA does not "approve" a company-related action submitted pursuant to FINRA

---

[3] Meta's Series A Shares traded on the OTC market under the symbol MMTLP.

[4] Available at https://cdn.prod.website-files.com/6169e69d0075ec7c66221a8b/63a376a38add926dd316f36a_NBH%20News%20Release%2012-20-2022%20.pdf  ("Next Bridge Press Release").

[5] FINRA Rule 6490 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6490.

[6] *Available at* https://www.finra.org/rules-guidance/notices/10-38.  In deciding a motion to dismiss, this Court may take judicial notice of a fact that is "not subject to reasonable dispute because [it is] capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1278 (11th Cir.

Rule 6490. *See generally* FINRA Rule 6490. Instead, FINRA reviews documents submitted by an issuer in connection with a company-related action and, if the documents are not deemed deficient,[7] FINRA processes the request and provides notice of the company-related action through an announcement in the FINRA Daily List publication, which is available on FINRA's website.[8] FINRA Reg Notice 10-38; *see also* SEC Release No. 34- 62434, 75 Fed. Reg. at 39604. FINRA's regulatory activities pursuant to Rule 6490 are consistent with FINRA's obligations under the Exchange Act to foster cooperation and coordination in clearing, settling, and processing transactions in OTC equity securities. 15 U.S.C. § 78o-3(b)(6); *see also* FINRA Rule 6490(a).

On December 6, 2022, as modified on December 8, 2022, FINRA announced the Meta Company-Related Action – a share exchange – in the Daily List publication ("the Announcement") in accordance with FINRA Rule 6490. Compl. ¶¶ 36-37; *see also* Compl. Ex. 6. The Announcement explained that "MMTLP shareholders with settled positions as of [December 12, 2022,] will receive one (1) share of [Next Bridge] for every one (1) share of MMTLP held." Compl. Ex. 6. Among other things, the Announcement further explained that any "[p]urchases of MMTLP executed after [December 8, 2022,] will not receive the distribution . . . . Symbol: MMTLP will be deleted effective [December 13, 2022]." *Id.*[9]

---

1999) (citing Fed. R. Evid. 201). Thus, the Court can take judicial notice of the FINRA rules and other documents found on FINRA's website that are relied upon in this motion.

[7] FINRA Rule 6490(d)(3) identifies the factors that FINRA considers to determine whether a Rule 6490 submission may be deemed deficient and not be processed.

[8] *Available at* https://otce.finra.org/otce/dailyList.

[9] The Announcement was modified on December 8, 2022, in part, to clarify that FINRA would *delete* the MMTLP trading symbol on December 13, 2022. Compl. ¶37; Ex. 6. While the original version of the Announcement, published on December 6, 2022, stated that "MMTLP *shares will be cancelled* effective [December 13, 2022]," Compl. ¶ 36, Ex. 6, FINRA does not

### D. The Trading Halt

FINRA Rule 6440 authorizes FINRA to direct its members to halt trading and quoting in an OTC equity security when it is necessary to protect investors and the public interest, including where "FINRA determines that an extraordinary event has occurred or is ongoing that . . . has caused or has the potential to cause major disruption to the marketplace or significant uncertainty in the settlement and clearance process ('Extraordinary Event Halt')." FINRA Rule 6440(a)(3).[10]

On December 9, 2022, FINRA exercised its authority under FINRA Rule 6440 to direct its members to halt trading and quoting in the Series A Shares because "an extraordinary event has occurred or is ongoing that has caused or has the potential to cause significant uncertainty in the settlement and clearance process for shares in MMTLP." Compl. Ex. 6 at page 4 of 7, [ECF No. 1-6]; *see also* FINRA Rule 6440(a)(3). As announced, the trading halt ended "concurrent with the deletion of the [MMTLP] symbol effective Tuesday, December 13, 2022." Compl. Ex. 6 at page 4 of 7, [ECF No. 1-6].

### LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Bare legal conclusions are insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

---

*and cannot* cancel a company's securities. Compl., Ex. 11 at page 3 of 9 [ECF 1-11], FINRA *Investor Insights* article. FINRA may, however, delete a trading symbol for a security when it learns that the security has been cancelled. *Id*. Thus, the Announcement was modified to reflect that FINRA would delete the MMTLP symbol. Compl. ¶37.

[10] FINRA Rule 6440 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6440-0.

To survive a motion to dismiss for lack of personal jurisdiction, a complaint must allege "sufficient facts to make out a prima facie case" of personal jurisdiction. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (internal quotation marks omitted); *see Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988).

**ARGUMENT**

Plaintiff's Complaint should be dismissed as to FINRA for at least three reasons. First, courts have consistently held that there is no private right of action against FINRA for its regulatory activities, and Plaintiff cannot simply designate FINRA as a "Nominal Defendant" to avoid dismissal. Even if the Court were to consider FINRA's status as a Nominal Defendant on the merits, Plaintiff has not sought any relief from FINRA, and FINRA's presence in the lawsuit will not aid Plaintiff in obtaining full recovery or relief. Second, because the only conduct in which FINRA is alleged to have engaged is regulatory activity, any claims against FINRA are barred by the doctrine of absolute regulatory immunity. Third, this Court lacks personal jurisdiction over FINRA.

None of these defects can be cured by amendment. Accordingly, the Complaint as to FINRA should be dismissed without leave to amend and with prejudice.

**A.     Plaintiff Failed to State a Claim Upon Which Relief Can be Granted.**

Despite almost 40 pages of allegations, Plaintiff's lengthy Complaint does not allege any actionable wrongdoing by FINRA. First, while Plaintiff asserts that its dispute with TradeStation stems from FINRA's regulatory activities, Compl. ¶86, the Complaint does not allege that FINRA engaged in any of the conduct that forms the basis of the causes of action asserted. *See generally* Compl. ¶¶88-207 (alleging 12 causes of action). Second, Plaintiff asserts that FINRA

has not (to date) taken any disciplinary action against its member firms in connection with the Meta Company-Related Action, Compl. ¶85; however, neither the Exchange Act nor any other statute provides Plaintiff with a private right of action against FINRA for acts or omissions in connection with its duties as a regulator. *See, e.g., In re Olick*, No. 99-CV-5128, 2000 WL 354191, *4 (E.D. Pa. Apr. 4, 2000) (a party "may not maintain a private cause of action against [FINRA] under the Exchange Act, or at common law, for regulatory actions taken by [FINRA]"); *Desiderio v. NASD,* 2 F. Supp. 2d 516, 521 (S.D.N.Y. 1998) ("[T]he Securities Exchange Act provides no express private right of action against [the SRO] for common law claims or for claims arising from [the SRO's] statutory function as a securities regulator."); *Spicer v. Chicago Board of Options Exchange, Inc.*, 977 F.2d 255, 260 (7th Cir. 1992) (declining to imply a right of action "against an [SRO] for violating or failing to enforce its own rules"); *Gustafson v. Stranges,* 572 F. Supp. 1154, 1158 (D. Minn. 1983) ("[T]here is no cause of action under federal law against [an SRO] for its alleged failure to investigate, report and terminate its member…."). Finally, Plaintiff alleges that the identity of the Doe Defendants "have been purposely, intentionally and with an intent to hinder any outside investigation by retail shareholders and their counsel . . . have been hidden and being protected by FINRA who refused numerous requests for this data, not only by Congress, but also in private litigation that would identify the participants of this RICO enterprise." Compl. ¶63.  Those allegations do not establish any wrongdoing by FINRA and instead simply ignore that FINRA properly (and successfully) opposed pre-dispute discovery where "petitioner's conclusory allegations [fell] far short of the showing necessary to obtain pre-action disclosure." *Khorassani v. FINRA,* 223 A.D.3d 589, 590

(N.Y. App. Div. 1st Dept 2024).[11] Accordingly, Plaintiff does not and cannot state a claim for relief against FINRA.

In an effort to avoid application of case law holding there is no private right of action against FINRA, Plaintiff named FINRA as a "Nominal Defendant." Compl. p. 1; ¶¶5, 36-38. "A nominal defendant is part of a suit only as the holder of assets that must be recovered in order to afford complete relief." *Chusid v. Swire Pac. Holdings, Inc.,* 2010 U.S. Dist. LEXIS 148297, *17 (S.D. Fla. July 16, 2010). Typically, a nominal defendant "has possession of the funds which are the subject of litigation" and is therefore "joined purely as a means of facilitating collection." *S.E.C. v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991). This Court has found persuasive the Fourth Circuit's definition of a nominal defendant as "a person who can be joined to aid the recovery *of relief* without an additional assertion of subject matter jurisdiction only because he has no ownership interest in the property which is the subject of the litigation." *Id.* (citing *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191-92 (4th Cir. 2002)) (emphasis added); *see also SEC v. Founding Ptnrs. Cap. Mgmt.,* 639 F. Supp. 2d 1291, 1292 (M.D. Fla. 2009) ("a federal court may order equitable relief against [a nominal defendant] where that person (1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds"). Here, however, the Complaint fails to establish any basis for naming FINRA as a nominal defendant. Plaintiff does not allege that FINRA possesses any funds that it is seeking to recover in this case. Plaintiff does not request any relief, equitable or otherwise, from FINRA. And Plaintiff fails to assert any reason that FINRA's presence is required to obtain full relief in this case.

---

[11] The law firm representing Plaintiff in this case also represented the plaintiff in the New York pre-dispute discovery case.

Because the Complaint fails to assert any cause of action against FINRA and because there is no basis to name FINRA as a nominal defendant, this action against FINRA should be dismissed with prejudice.

**B.     FINRA Is Absolutely Immune for its Regulatory Activities**

The Complaint identifies two "material events of this action" that involve FINRA – the trading halt announced on December 9, 2022, and the deletion of the MMTLP ticker on December 13, 2022.  Compl. ¶ 60.  Both of these events are regulatory activities in which FINRA engaged pursuant to the Exchange Act.

It is well settled in this and other circuits, that a self-regulatory organization ("SRO") such as FINRA is immune from suit when it engages in regulatory activities authorized by Congress. *See Weissman v. NASD, Inc.,* 500 F.3d 1293, 1296 (11th Cir. 2007); *see also D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir. 2001), *cert. denied*, 534 U.S. 1066 (2001) (SRO is "immune from liability for claims arising out of the discharge of its duties under the Exchange Act"); *Sparta Surgical Corp.*, 159 F.3d at 1214 (an SRO is absolutely immune from suit for any claims regarding regulatory activities performed "under the aegis of the Exchange Act's delegated authority").  To determine whether immunity applies to an SRO's conduct, courts "look to the objective nature and function of the activity for which the SRO seeks to claim immunity." *Weissman,* 500 F.3d at 1297; *see also Sparta Surgical Corp.*, 159 F.3d at 1214 (an SRO is absolutely immune "from suit for conduct falling within the scope of the SRO's regulatory and general oversight functions"); *Gallagher v. Fin. Indus. Reg. Auth., Inc.*, No. 21-13605, 2022 WL 1815594, at *7 (11th Cir. June 3, 2022) (applying immunity to regulatory obligations arising under the Exchange Act without regard to FINRA's subjective intent or motivation); *Hofman v. Fid. Brokerage Servs., LLC*, No. 23CV00881MCSPVC, 2023 WL 3872564, at *6 (C.D. Cal. May 8, 2023) (characterizing allegations against FINRA "as

11

misconduct by FINRA in its regulation and oversight of the securities markets – i.e., a capacity in which FINRA enjoys immunity from suit"). Here, every reference to FINRA in the Complaint relates to its regulatory activities. *See, e.g.*, Comp. ¶ 83 (expressly stating that dispute stems from actions taken by FINRA in its role as an SRO), ¶¶ 36-38, 70-71 (describing notice FINRA provided regarding Meta Company-Related Action), ¶ 39 (FINRA's deletion of the MMTLP trade symbol), ¶¶ 67, 73, 84 (discussing trading halt), and pp. 13-14 (diagrams referencing FINRA's regulatory activities).

The immunity afforded to FINRA in performing its regulatory activities is absolute and extends to the "improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC." *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d at 114; s*ee also Tawil v. FINRA,* 2023 U.S. Dist. LEXIS 117247, *2-3 (N.D. Fla. May 24, 2023), ("Suspending trading – when warranted – is precisely the kind of activity FINRA can undertake in its quasi-regulatory capacity.  A claim that FINRA got it wrong – that trading should not have been suspended – is precisely the kind of claim from which FINRA should and does have immunity."). This form of immunity is "an integral part of the American system of securities regulation." *Dexter v. Depository Tr. & Clearing Corp.*, 406 F. Supp. 2d 260, 263 (S.D.N.Y. 2005), *aff'd*, 219 F. App'x 91 (2d Cir. 2007). Thus, to the extent that the Complaint *implies* that FINRA somehow failed to fulfill its regulatory duties (*e.g.*, Comp. ¶¶ 63, 75-82),[12] FINRA's immunity applies "despite [plaintiff's] disagreement with how FINRA carried out this function." *Empire Fin. Grp.,* 2009 U.S. Dist. LEXIS 133643, at *19.

---

[12] For example, Plaintiff alleges (upon information and belief) that FINRA failed "to oversee, supervise and initiate disciplinary action against its member broker-dealers for violations of state and federal securities laws for the lending, borrowing and sale of counterfeit MMTLP Shares into the open market that resulted in the opening of short positions that could not close." Compl. ¶82.

Because the only conduct in which FINRA is alleged to have engaged relates to its regulatory activities, absolute regulatory immunity bars any claims against FINRA in this case, and the Complaint should be dismissed with prejudice as to FINRA.

**C.     The Court Lacks Personal Jurisdiction Over FINRA.**

The Complaint should also be dismissed under Rule 12(b)(2) because FINRA is not subject to personal jurisdiction in this action.

A federal court undertakes a "two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). That inquiry establishes that FINRA is not subject to either general or specific personal jurisdiction in this case.

**1.     FINRA is Not Subject to General Personal Jurisdiction.**

FINRA is an out-of-state corporation that is not subject to general personal jurisdiction in Florida. Florida's general-jurisdiction statute "extends to the limits on personal jurisdiction imposed by the" Constitution. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (internal quotation marks omitted) (citing Fla. Stat. § 48.193(2)). And the Constitution permits general jurisdiction only where a defendant's contacts with the forum State "are so 'continuous and systematic' as to render [it] essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted). For a corporation like FINRA, the "paradigm" forums for general jurisdiction are its "formal place of incorporation" and "principal place of business." *Id*. at 137, 139 n.19.

It is undisputed that FINRA is a Delaware corporation with its principal place of business in Washington, D.C.  Compl. ¶5; *see also Webb v. FINRA*, 889 F.3d 853, 856 (7th Cir. 2018)

("FINRA is a Delaware corporation with its principal place of business in Washington, D.C."). Only in a truly "exceptional case" could a corporation like FINRA be deemed "essentially at home" in a place where it is not incorporated or headquartered. *Daimler*, 571 U.S. at 139 n.19. In this case, Plaintiff asserts only that "FINRA operates an office in the State of Florida." Compl. ¶6. This allegation is insufficient to establish that FINRA is "essentially at home" in Florida because "[a]corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20. Because FINRA is not "essentially at home" in Florida, it is not subject to general jurisdiction there. *Daimler*, 571 U.S. at 127.

### 2. FINRA is Not Subject to Specific Personal Jurisdiction.

FINRA is also not subject to specific personal jurisdiction in Florida because Plaintiff's claims have no connection to FINRA's alleged contacts with Florida.

First, Plaintiff alleges no facts bringing FINRA within the coverage of Florida's specific-jurisdiction statute. Plainly, the mere allegation that FINRA maintains "an office" in Florida is wholly insufficient. Fla. Stat. § 48.193(1)(a)(1), covers claims "arising from . . . [o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." But under Florida law, "although the term 'arising from' is broad, it nevertheless requires a 'direct affiliation,' 'nexus,' or 'substantial connection' to exist between the basis for the cause of action and the business activity." *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013) (some internal quotation marks omitted).

Accordingly, the mere "presence and operation of an office in Florida" is "not dispositive" of whether the statute applies. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005). There must be a connection between a plaintiff's claims and a defendant's Florida office. *See, e.g.*, *Interlink Grp. Pro. Servs., Inc. v. ClearOne, Inc.*, No. 16-cv-24338, 2017 WL 10187646, at *4 (S.D. Fla. Oct. 11, 2017) ("Although

Defendant has an office in Florida, . . . no one from that office has had contact with Plaintiff, thereby making it immaterial to the analysis."), *report and recommendation adopted*, 2017 WL 10187641 (S.D. Fla. Nov. 17, 2017); *Scharrer v. Fundamental Admin. Servs., LLC*, No. 8:12-cv-1854, 2013 WL 12169308, at *4 (M.D. Fla. Sept. 10, 2013) (Scriven, J.) (dismissing for lack of personal jurisdiction because "the contacts that [the defendant allegedly] made with Florida . . . are not related to Plaintiff's claim in this case").

Here, the Complaint alleges *no* connection whatsoever between Plaintiff's claims and any activity at FINRA's Florida office. Because nothing that FINRA allegedly did in Florida "had anything to do with" Plaintiff's claims, FINRA is not subject to specific jurisdiction under Florida's long-arm statute. *Melgarejo*, 537 F. App'x at 861.

Second, even if Plaintiff could satisfy the long-arm statute, it still could not meet the "separate" and "'more restrictive requirement'" of constitutional due process. *Melgarejo*, 537 F. App'x at 859–60 (citation omitted). "A court's exercise of specific personal jurisdiction comports with due process when (1) the non-resident defendant 'purposefully availed himself' of the privilege of conducting activities within the forum state, (2) the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts within the forum state, and (3) the exercise of personal jurisdiction is in accordance with 'traditional notions of fair play and substantial justice.'" *Tufts v. Hay*, 977 F.3d 1204, 1211 (11th Cir. 2020) (citation omitted).

Plaintiff cannot carry this constitutional burden because the Complaint does not include any allegations that FINRA's alleged conduct involved any contacts with Florida. Plaintiff therefore "fail[s] to establish that [its] claims arise out of or relate to [FINRA's] contacts in Florida." *Waite*, 901 F.3d at 1313; *see also, e.g., Daedalus Cap. LLC v. Vinecombe*, No. 8:12-cv-2533, 2014 WL 12641600, at *3 (M.D. Fla. Jan. 28, 2014) (Scriven, J.) (dismissing for lack of

personal jurisdiction because the "contacts alleged by Plaintiffs do not relate to or give rise to the present litigation").[13]

Finally, exercising personal jurisdiction over FINRA would not comport with fair play and substantial justice. "The burden on [FINRA] of defending this suit in Florida would be more than minimal" and "suing in Florida is not convenient for" the (non-resident) Plaintiff as well. *See Madara v. Hall*, 916 F.2d 1510, 1519 (11th Cir. 1990).

Plaintiffs therefore fail to meet either the statutory or constitutional requirements for establishing specific personal jurisdiction over FINRA in this action. Accordingly, the Court should dismiss this case for lack of personal jurisdiction over FINRA.

### D. Permitting Amendment to the Complaint Would be Futile.

Once a responsive pleading has been filed, the Federal Rules of Civil Procedure provide that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). While leave to amend should be freely given "when justice so requires," *id.*, "a district court need not allow an amendment that would be futile." *Parekh v. CBS Corp.,* 820 Fed. App'x 827, 834 (11th Cir. 2020); *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1133 (11th Cir. 2019) (court need not allow an opportunity to amend "where further amendment would be 'futile'") (citation omitted). A proposed amendment is futile "when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks,* 510 F.3d 1307, 1310 (11th Cir. 2007) (citing *Hall v. United Ins. Co.,* 367 F.3d 1255, 1263 (11th Cir. 2004)).

---

[13] That one other defendant (TradeStation) is alleged to have a branch office in Florida (Compl. ¶ 2) is constitutionally irrelevant because "'minimum contacts' analysis looks to *the defendant's contacts* with the forum State itself, not the defendant's contacts with persons who reside there" or otherwise have contacts there. *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emphasis added).

Here, any proposed amendment would be futile. As an initial matter, because FINRA's only connection to this case is its regulatory activities, Plaintiff cannot state a private right of action against FINRA, as a matter of law, and FINRA is entitled to absolute regulatory immunity. As a result, no amendment to the Complaint could cure these fatal defects. Second, because FINRA is not at home in Florida and none of FINRA's alleged conduct occurred in Florida, no amendments to the Complaint could establish personal jurisdiction in this Court. Because amendment to the Complaint would be futile, this Court can and should dismiss this case with prejudice. *See Hall v. United Ins. Co.,* 367 F.3d 1255, 1262-63 (11th Cir. 2004); *see also Cichowski v. Totten,* 2024 U.S. App. LEXIS 11720 (11th Cir. May 15, 2024).

## **CONCLUSION**

FINRA respectfully requests that the Court dismiss the Complaint against FINRA with prejudice and grant such other and further relief to which FINRA may be entitled.

Respectfully submitted,

*/s/David S. Mandel*
David S. Mandel
FBN 38040
**MANDEL & MANDEL LLP**
169 East Flagler Street, Suite 1224
Miami, FL 33131
Telephone: (305) 374-7771
dsm@mandel.law

*Counsel for Defendant,
Financial Industry Regulatory Authority, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on July 3, 2024, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*David S. Mandel*