IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| INTER-COASTAL WATERWAYS, LLC, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) Case No. 24-cv-60891-Civ-AHS |
| TRADESTATION SECURITIES, INC., | ) |
| DOE DEFENDANTS 1-10 and the | ) |
| FINANCIAL INDUSTRY | ) |
| REGULATORY AUTHORITY, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**DEFENDANT TRADESTATION SECURITIES, INC.'S MOTION TO COMPEL
ARBITRATION AND FOR STAY OF PROCEEDINGS AND
INCORPORATED MEMORANDUM OF LAW**

Defendant TradeStation Securities, Inc. ("TradeStation") under the Federal Arbitration Act 9 U.S.C. § 1, *et seq*., respectfully requests the Court (i) to compel Plaintiff Inter-Coastal Waterways, LLC, to arbitrate its claims against TradeStation, and (ii) to stay this action pending completion of arbitration according to the express terms of the binding arbitration agreement between the parties. In support of this motion, TradeStation states as follows:

**I.      FACTUAL BACKGROUND**

1. On or about October 31, 2022, Plaintiff Inter-Coastal Waterways LLC ("Plaintiff") applied for and opened a self-directed trading equity brokerage account (the "Account") with TradeStation.

2. As admitted in ¶ 20 of the Complaint, in connection with opening the Account, Plaintiff agreed to the terms set forth in the TradeStation Account Application Package ("Account Application"), when its principal executed the Account Application signature page, which stated in bold and conspicuous text on the same page above the signature line:

Case No. 24-cv-60891-Civ-AHS

> **AGREEMENT TO ARBITRATION OF DISPUTES RELATING TO (1) EQUITIES ACCOUNTS…:** (1) If you are applying for an Equities (Equities & Options) account, you acknowledge and affirm that you have read and agree to the **pre-dispute arbitration provisions** set forth in **section 38 of the TradeStation Securities, Inc. Customer Account Agreement for Equities**…

*See Exhibit 1 to the Complaint at p. 18.*

3. As also admitted in ¶¶ 68-69 of the Complaint, Plaintiff "agreed to Section 38 of the TradeStation Securities, Inc. Customer Account Agreement for Equities" ("Customer Account Agreement"), which provides the following binding arbitration agreement:

> [T]hat any and all controversies, claims or disputes related to your Account, the Services, and/or the determination of any contractual or other rights and liabilities under this Agreement, which may arise between you and TradeStation Securities (and/or any of its officers, directors, employees, agents) shall be determined by arbitration conducted before FINRA in accordance with its arbitration rules then in force. Judgment upon any award of the arbitrators may be entered in any court, state or federal, having jurisdiction thereof.

*See Exhibit 9 to the Complaint at p. 16.*

4. The Customer Account Agreement also clearly states that:

> All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by a judge, except as provided by the rules of the arbitration forum in which a claim is filed.

*Id. at p. 15.*

5. In ¶ 22 of the Complaint, Plaintiff concedes that it also agreed to and is bound by the Master Securities Lending Agreement ("Lending Agreement"), which it attached as Exhibit 2 to the Complaint. The Lending Agreement also contains a mandatory arbitration provision which states:

> 24. **MANDATORY ARBITRATION**
>
> THE PARTIES HEREBY AGREE THAT ANY DISPUTE, CONTROVERSY OR CLAIM BETWEEN THE PARTIES ARISING OUT OF THIS AGREEMENT OR ANY LOAN HEREUNDER SHALL BE SUBJECT TO THE MANDATORY ARBITRATION PROVISION CONTAINED IN ANY CUSTOMER ACCOUNT OR SIMILAR AGREEMENT ENTERED INTO BETWEEN SUCH PARTIES.

*See Exhibit 2 to the Complaint at p. 17.*

6.      Plaintiff's Complaint, filed May 24, 2024, contains the following claims against TradeStation: (i) rescission pursuant to Section 29(b) of the Exchange Act, for allegedly violating 17 CFR § 240.15c3-3(b)(1); (ii) Section 678.5041, Fla. Stat (2023), for allegedly failing to maintain physical Next Bridge securities certificates; (iii) Section 678.5071, Fla. Stat (2023), for allegedly failing to comply with Plaintiff's entitlement order; (iv) Section 895.03, Fla. Stat (2023), Florida Racketeer Influenced and Corrupt Organization Act; (v) violations of Section 772.103, Fla. Stat. (2023), Florida Civil Remedies for Criminal Practices Act; (vi) breach of contract; (vii) negligent misrepresentation; (viii) negligence *per se* for violations of state and federal securities laws and regulations; (ix) conversion; (x) breach of fiduciary duty; (xi) unjust enrichment; and (xii) constructive trust.

7.      All of these claims relate to Plaintiff's purchase and TradeStation's lending of Meta Materials, Inc. Series A Preferred Dividend Shares ("MMTLP Shares") in the Account between December 5 and 8, 2022. As more fully explained below, all claims asserted by Plaintiff against TradeStation are governed by the binding arbitration clauses quoted above. Indeed, Plaintiff does not contest the validity of the agreement to arbitrate, or whether the claims asserted fall within the ambit of the arbitration agreement. These concessions alone require that this dispute be compelled to arbitration.

8.      Plaintiff's sole and totally disingenuous anticipatory argument in opposition to the filing of this inevitable motion is that FINRA is not able to be an "unbiased" arbitrator because the dispute, in part, (and "upon information and belief"[1]) relates to actions allegedly taken by FINRA in its self-regulatory and market oversight capacity. *See Complaint* at ¶ 86. This argument is both

---

[1] See, e.g., Complaint at ¶82.

factually and legally incorrect, and contradictory to the "strong federal policy favoring arbitration," as explained in more detail below. It has also been squarely rejected by other sister courts in similar complaints brought by MMTLP shareholders.

## II. LEGAL STANDARD AND ANALYSIS

### A. There is a Strong Policy Favoring Enforcement of Arbitration Agreements.

9. Section 2 of the Federal Arbitration Act ("FAA") provides, in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

10. It is well settled that disputes concerning securities transactions fall within the ambit of the FAA. *See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52 (1995); *Berti v. UBS Fin.,* No. 2:11-cv-478-FtM-DNF, 2012 U.S. Dist. LEXIS 156865, at *26 (M.D. Fla. Nov. 1, 2012) (enforcing arbitration provision in brokerage account agreement and compelling customer claim to arbitration before FINRA); *Park v. E*Trade Fin. Corp. Servs., Inc.*, Civil Action No. 2:23-CV-69-RWS, 2023 U.S. Dist. LEXIS 238077, at *10-11 (N.D. Ga. July 25, 2023) ("E*TRADE's Customer Agreement involves interstate commerce because it governs the trade of securities on a national scale[.] As the Provision implicates interstate commerce, the FAA governs Plaintiff's claims.") (citing *Belz v. Morgan Stanley Smith Barney, LLC*, No. 3:13-cv-636-J-34MCR, 2014 U.S. Dist. LEXIS 28906, at *5 (M.D. Fla. Mar. 5, 2014)).

11. Florida courts have also repeatedly held that the FAA governs arbitration contracts

between securities brokerage firms and their customers.[2] *K. W. Brown & Co. v. McCutchen*, 819 So. 2d 977, 979 (Fla. 4th DCA 2002) ("Because the parties' underlying claims in arbitration involve securities, the Federal Arbitration Act applies."); *Qubty v. Nagda*, 817 So. 2d 952, 955-56 (Fla. 5th DCA 2002) (same). Therefore, the agreements, including the arbitration provisions contained therein, are governed by the FAA.

12. As the United States Supreme Court has recognized, the FAA embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) (by enacting Section 2 of the FAA, "Congress has thus mandated the enforcement of arbitration agreements."); *see also Weeks v. Harden Mfg. Corp.,* 291 F.3d 1307, 1312 (11th Cir. 2002) ("[A]rbitration agreements to resolve disputes between parties have now received near universal approval."); *Berti,* 2012 U.S. Dist. LEXIS 156865 at *18 ("Congress mandated a federal policy which favors arbitration agreements.").

13. In accordance with this policy favoring arbitration, Courts should resolve all doubts regarding the scope of an arbitration clause in favor of arbitration. *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 675 (2012); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2857 (2010); *see also, Berti*, 2012 U.S. Dist. LEXIS 156865 at *18 ("arbitration clauses are generally construed in favor of arbitration.").

---

[2] While the FAA governs the disputes between Plaintiff and TradeStation in this case, the same result would be reached under the Florida Arbitration Code. *See* Fla. Stat. §§ 682.02 (arbitration agreements valid, enforceable and irrevocable) and 682.03 (proceedings to compel arbitration).

**B. The Valid Arbitration Agreement Between the Parties Mandates Arbitration of All Claims.**

14. The strong presumption in favor of arbitration limits the Court's analysis on a motion to compel arbitration to two gateway questions: (1) whether a valid agreement to arbitrate exists; and (2) whether the claims at issue fall within the scope of the arbitration agreement. *See Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002).

15. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). "Consequently, under the FAA, [] a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute." *Olazabal v. Serv. Keepers Maint.,* No. 17-20660-CIV-LENARD, 2017 U.S. Dist. LEXIS 53068, at *3 (S.D. Fla. Apr. 5, 2017).

**i. A Valid Agreement to Arbitrate Exists.**

16. "Arbitration under the [FAA] is a matter of consent, not coercion." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 479 (1989). Creation of a valid and enforceable written arbitration agreement is a matter of contract. *See Salamaya v. Mastec Inc.,* No. 6:11-cv-1633-Orl-19GJK, 2012 U.S. Dist. LEXIS 200936, at *6-7 (M.D. Fla. Jan. 2, 2012); *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001).

17. Here, Plaintiff admittedly entered into a binding contract with TradeStation when it executed the Account Application, the Customer Account Agreement and the Lending Agreement, as evidenced by the signature of Plaintiff's principal on the documents. Through this signature, Plaintiff acknowledged and accepted the terms of the Agreement, including the pre-dispute arbitration clauses quoted above.

18. Indeed, as noted above, Plaintiff concedes a valid agreement exists, and much of the Complaint is based on purported breaches of the Account Application, the Customer Account Agreement and the Lending Agreement. *See, e.g. Complaint* at ¶ 20-22. Without a valid and enforceable agreement, Plaintiff's Account would never have been opened, and the trades at issue would not have taken place.

19. Notably, Plaintiff's managing member elected not to consent to the arbitration of disputes relating to *futures* accounts (which does not apply to this case since no futures accounts were applied for or opened). *See Exhibit 1 to Complaint* at p. 18. Clearly, she was fully cognizant of the dispute resolution terms and conditions associated with the Account that TradeStation is seeking to enforce by filing this motion.

### ii. Plaintiff's Claims are Within the Scope of the Agreement.

20. The Customer Agreement contains a clear and unequivocal arbitration clause that provides *"***[T]hat any and all controversies***, claims or disputes related to your Account, the Services, and/or the determination of any contractual or other rights and liabilities under this Agreement, which may arise between you and TradeStation Securities (and/or any of its officers, directors, employees, agents) shall be determined by arbitration conducted before FINRA in accordance with its arbitration rules then in force.***"* *See* Complaint, Exhibit 9.

21. Similarly, the arbitration clause in the Lending Agreement unequivocally provides **"THAT ANY DISPUTE, CONTROVERSY OR CLAIM BETWEEN THE PARTIES ARISING OUT OF THIS AGREEMENT OR ANY LOAN HEREUNDER SHALL BE SUBJECT TO THE MANDATORY ARBITRATION PROVISION CONTAINED IN ANY CUSTOMER ACCOUNT OR SIMILAR AGREEMENT ENTERED INTO BETWEEN SUCH PARTIES.**" *See* Complaint, Exhibit 2 at p. 17.

22. The arbitration clause at issue is typical of the type of dispute resolution clauses found in standard financial institution account agreements, and they are regularly enforced by courts. *See e.g.*, *Berti,* 2012 U.S. Dist. LEXIS 156865, at *26 (finding arbitration provision in brokerage account agreement enforceable and compelling customer claim to arbitration); *Bufkin v. Scottrade, Inc.,* No. 2:17-cv-281-FtM-29CM, 2017 U.S. Dist. LEXIS 195595, at *8 (M.D. Fla. Nov. 29, 2017) ("Pursuant to 9 U.S.C. § 3, the case will be stayed as to Scottrade pending arbitration under the Brokerage Account Agreement.").

23. The claims asserted by Plaintiff against TradeStation admittedly relate to its account because the purchase of MMTLP Shares, and how TradeStation lent them out pursuant to its securities lending program, are at the core of this case and are governed by, and arise under the Customer Account Agreement and the Lending Agreement both of which are cited extensively in the Complaint as the source of duties, rights, and obligations Plaintiff seeks to enforce in this action. *See generally* Complaint.

24. Given the broad and unambiguous language in the Customer Account Agreement and the Lending Agreement as well as the allegations in the Complaint, it is indisputable that these claims fall within the applicable arbitration provision and must therefore be compelled to arbitration before FINRA. *Johnson Law Grp. v. Elimadebt, LLC.*, No. 09-81331-CIV-MARRA/JOHNSON, 2010 U.S. Dist. LEXIS 165939, at *8-9 (S.D. Fla. Mar. 10, 2010) ("Here, the arbitration clause provides for arbitration of 'any controversy or claim arising out of or relating to this Agreement.' As such, the arbitration clause is considered 'broad,' rather than 'narrow' because it evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause."). "When the Court faces a broad arbitration

clause, as it does here, it should follow the presumption of arbitration and resolve doubts in favor of arbitration." *Id.*

### C. Plaintiff Cannot Avoid Arbitration by Naming FINRA as a Nominal Defendant and Through Baseless Allegations Against FINRA of Potential Bias

25. While Plaintiff concedes the validity and enforceability of the arbitration clause, it seeks to avoid its obligation to arbitrate by naming FINRA as a nominal defendant and by further making conclusory allegations that FINRA "cannot fulfill its duties as an unbiased arbitrator to this dispute pursuant to the Arbitration Agreement." Complaint ¶ 86. Plaintiff fails to support these specious allegations with any plausible rationale, relying solely on the fact that FINRA is a self-regulatory organization and in that capacity administered the MMTLP trading halt.

26. As a preliminary matter, as the case law cited above clearly demonstrates, this Court's inquiry is limited to two issues: is there a valid agreement to arbitrate, and do the claims fall within the scope of the arbitration provision? As both questions are answered in the affirmative, arbitration must be compelled. Extraneous issues such as the feeble allegations of purported FINRA bias simply do not figure into the analysis. Indeed, the appropriate remedy, assuming Plaintiff can show bias in the arbitration process if they lose in that forum, is to seek vacatur of the award issued by the FINRA Panel under 9 U.S.C. §10.

27. Beyond the foregoing, many of the thousands of arbitrations administered by FINRA Dispute Resolution Services every year involve securities disputes among and between brokerage customers, like Plaintiff, and FINRA members, like TradeStation. FINRA operates the largest securities dispute resolution forum in the United States. Under Plaintiff's bizarre "bias" theory, FINRA conceivably could be conflicted from administering virtually every arbitration dispute brought before it. Moreover, FINRA Dispute Resolution Services' operations are totally separate and distinct from other FINRA departments, like, for example, Market Regulation, the

9

department that likely administered the MMTLP trading halt. FINRA Dispute Resolution Services has its own leaders, administrators and rules and operates independently of other FINRA departments.

28. Notably, every FINRA arbitration award underscores the independence of arbitrators, who are selected by the parties, to make their decisions without FINRA intervention by including the following preamble at the beginning of each award:

> Awards are rendered by independent arbitrators who are chosen by the parties to issue final, and binding decisions. FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award.

29. Furthermore, similar arguments have previously been raised by other MMTLP shareholders and were rejected by District Courts which compelled arbitration. *See, e.g. Park v. E*Trade Fin. Corp. Servs., Inc.,* Civil Action No. 2:23-CV-69-RWS, 2023 U.S. Dist. LEXIS 238077, at *23 (N.D. Ga. July 25, 2023). In *Park*, the Northern District Court of Georgia observed:

> FINRA also has several safeguards in place to ensure that Plaintiff receives a fair hearing. For example, Plaintiff can appeal the FINRA arbitration award if any of the following occurs:
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
>
> 9 U.S.C.A. § 10. Plaintiff can also take steps to protect himself during the arbitration process. For example,
>
> [p]ursuant to FINRA's Code of Arbitration Procedure for Customer Disputes . . . parties choose a three-judge arbitration panel by striking and ranking arbitrators from a list randomly generated by a computer program known as the "Neutral List Selection System." See FINRA Rule 12403; see also FINRA Rule 12400(a) (describing the Neutral List Selection System).

> The Code imposes a continuing duty on arbitrators to disclose "any circumstances which might preclude the arbitrator from rendering an objective and impartial determination in the proceeding," and it sets forth a procedure for arbitrator recusal. FINRA Rule 12405 (a), (b); FINRA Rule 12406 . . . *Wells Fargo Clearing Servs., LLC v. Leggett*, 876 S.E.2d 888, 894 (Ga. Ct. App. 2022). "[This neutral] selection process reflects FINRA's desire to avoid conflicts of interest and bias among the listed arbitrators." *Id.* at 895 (citing FINRA Rule 12403(a)(3)).
>
> Plaintiff failed to put forth any evidence showing that FINRA is biased against him or will compromise his rights to a fair hearing. Thus, the Court will not invalidate the Provision on these grounds.

*Id.*

30. In yet another MMTLP case, *Hensley v. TD Ameritrade*, 3:23-cv-05159, the U.S. District Court for the Western District of Washington squarely addressed the protections inherent in the FINRA Dispute Resolution process from similar claims as those here:

> FINRA will not actually run the arbitration. Instead, FINRA's code provides that the parties to the panel both vote to choose who will arbitrate their dispute. *See* FINRA RULE 12403, https://www.finra.org/rules-guidance/rulebooks/finra-rules/12403. These arbitrators are independent and any party may ask an arbitrator to recuse themselves for "good cause." *See* FINRA RULE 12406, https://www.finra.org/rules-guidance/rulebooks/finra-rules/12406; *see also Hofman*, 2023 WL 3872564, at *4 (noting that FINRA arbitrators are third-party neutrals). Lack of discovery and other procedural restrictions in FINRA arbitration is also irrelevant as the Supreme Court has made clear that the FAA "directed [] [courts] to respect and enforce the parties' chosen arbitration procedures." *Epic Sys.*, 138 S. Ct. at 1621.

31. Both sister courts in *Pack* and *Hensley* have rejected these arguments as factually and legally baseless, and TradeStation submits that this Court should follow their reasoning.

**D. This Action Should Be Stayed As To TradeStation Pending Arbitration**

32. The FAA plainly requires that a court stay litigation where the claims presented are subject to an arbitration agreement. *See* 9 U.S.C. § 3 (In any court proceeding brought "upon any issue referable to arbitration under an agreement in writing…the court…upon being satisfied that the issue involved…is referrable to arbitration…shall on application of one of the parties stay the

11

trial of the action until such arbitration has been had."); s*ee also Smith v. Spizzirri,* 144 S. Ct. 1173 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, §3 of the FAA compels the court to stay the proceeding. If there were any doubt, the FAA's structure and purpose confirm that a stay is required."). Therefore, should the Court grant TradeStation's motion and compel arbitration of Plaintiff's claims against it, a stay of all proceedings in this action is also required.

### III. CONCLUSION

Defendant TradeStation Securities, Inc. respectfully requests the Court to enter an order compelling arbitration of this dispute and staying all further proceedings in this action, including discovery, until arbitration has been completed in accordance with the FAA and the terms of the applicable arbitration agreement by which Plaintiff is bound.

### Local Rule 7.1(a)(3) Certification

I hereby certify that undersigned counsel conferred with Plaintiff's counsel who opposes the relief sought in this Motion.

DATED: July 9, 2024                                            Respectfully submitted,

                                                                             */s/ Leonel Peraza*
                                                                             Leonel Peraza, Jr., Esq.
                                                                             Florida Bar No. 0099089
                                                                              BRESSLER, AMERY & ROSS, P.C.
                                                                              515 East Las Olas Blvd., Suite 800
                                                                              Fort Lauderdale, Florida 33301
                                                                              Telephone: (954)499-7979
                                                                              lperaza@bressler.com
                                                                              mgomez@bressler.com
                                                                              *Counsel for Defendant TradeStation Securities, Inc.*

Case No. 24-cv-60891-Civ-AHS

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing was electronically filed on July 9, 2024, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

*/s/ Leonel Peraza*
Leo Peraza, Esq.