## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| INTER-COASTAL WATERWAYS LLC, | CIVIL ACTION NO. 0:24-cv-60891-AHS |
| *Plaintiff,* | |
| v. | |
| TRADESTATION SECURITIES, INC. and DOE DEFENDANTS 1-10, | |
| *Defendants,* | |
| and | |
| THE FINANCIAL INDUSTRY REGULATORY AUTHORITY, | |
| *Nominal Defendant.* | |

## PLAINTIFF INTER-COASTAL WATERWAYS LLC'S MEMORANDUM OF LAW IN OPPOSITION TO NOMINAL DEFENDANT THE FINANCIAL INDUSTRY <u>REGULATORY AUTHORITY'S MOTION TO DISMISS</u>

THE BASILE LAW FIRM P.C.

Agapija Cruz, Esq.
Florida Bar No.: 1027984
365 Fifth Avenue S., Suite 202
Naples, Florida 33472
Tel.:    (239) 232-8400
Fax:    (631) 498-0478
Email: agapija@thebasilelawfirm.com

Joseph F. Rose, Esq. *(admitted Pro Hac Vice)*
390 N. Broadway, Ste. 140
Jericho, New York 11753
Tel.:    (516) 455-1500
Fax:    (631) 498-0478
Email: joe@thebasilelawfirm.com

*Counsel for Plaintiff Inter-Coastal Waterways LLC*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

ARGUMENT .........................................................................................................................8

    I.    FINRA IS PROPERLY NAMED AS A NOMINAL DEFENDANT TO THIS ACTION.8

        A. Plaintiff Named FINRA as a Nominal Defendant Because FINRA is a Named Third Party to the Agreements ..........................................................................................9

        B. Plaintiff Named FINRA as a Nominal Defendant Because FINRA Can Not Act as an Unbiased Alternative Dispute Resolution Service in the Dispute Between Plaintiff and TradeStation ......................................................................................10

        C. FINRA's Unlawful Revision of Meta Materials' December 6, 2022 Notice of Corporate Action and the Subsequent U3 Halt......................................................11

        D. FINRA Was Aware of Fraudulent Market Activity Occurring Amongst Its Member Brokers.  However, FINRA Failed to Initiate Disciplinary Proceedings Against These Brokers ........................................................................................................13

        E. A TradeStation Representative Sat on FINRA's Regional Advisory Committee on December 9, 2022 ..................................................................................................14

        F. FINRA's Participation in this Action as a Nominal Defendant Has No Bearing on the Action's Ultimate Outcome ................................................................................15

    II.    THIS COURT HOLDS PERSONAL JURISDICTION OVER FINRA ..........................17

        A. Although FINRA is Merely a Nominal Defendant, FINRA's Activities Affected Plaintiff Within the State of Florida, Establishing Personal Jurisdiction Pursuant to Florida's Long Arm Statute ...................................................................................17

    III.    PLAINTIFF "FAILURE TO STATE A CLAIM" AGAINST FINRA IS IRRELEVANT AS FINRA IS A NOMINAL PARTY ..............................................................................18

        A. Plaintiff Does Not, and Can Not Allege Any Theory of Liability Against Nominal Defendant FINRA and an Amendment to the Complaint is Unnecessary.............18

CONCLUSION.....................................................................................................................20

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases:**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................18

*CFTC v. Kimberlynn Creek Ranch, Inc.*,
276 F.3d 187 (4th Cir. 2002) ...............................................................................8, 10

*Chusid v. Swire Pac. Holdings, Inc.*,
2010 U.S. Dist. LEXIS 148297 (S.D. Fla. July 16, 2010)...................................8, 10

*CIC Contrutora, Inc. v. Beccari*,
2018 U.S. Dist. LEXIS 122973 (S.D. Fla. July 20, 2018)........................................8

*Guy Roofing, Inc. v. Angel Enters., LLC*,
2017 U.S. Dist. LEXIS 144994 (S.D. Fla. Sept. 5, 2017) .....................................18

*Happy Tax Franchising, LLC v. Hill*,
2020 U.S. Dist. LEXIS 162416 (S.D. Fla. Sept. 2, 2020) .....................................17

*Hartford Fire Ins. v. Harleysville Mut. Inc. Co.*,
736 F.3d 255 (4th Cir. 2013) ...................................................................................9

*In re Murchison*,
349 U.S. 133 (1955)................................................................................................10

*Janvey v. Adams*,
588 F.3d 831 (5th Cir. 2009) ...................................................................................8

*Lopez v. Martens*,
2020 U.S. Dist. LEXIS 175911 (S.D. Fla. Sept. 24, 2020) .....................................8

*Metro. Transp. Auth. v. U.S. Fid. & Guar. Co.*,
14-CV-9059 (PAE), 2015 U.S. Dist. LEXIS 48801 (S.D.N.Y. Apr. 14, 2015) .........9

*Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*,
304 F.3d 1076 (11th Cir. 2002) ..............................................................................18

*Milburn v. United States*,
    734 F.2d 762 (11th Cir. 1984) .................................................................................18

*Multiplan USA Corp. v. Waltham Assets, Ltd.*,
    2016 U.S. Dist. LEXIS 199488 (S.D. Fla. Mar. 22, 2016).........................................9

*SEC v. Cherif*,
    933 F.2d 403 (7th Cir. 1991) ..................................................................................11

*SEC v. Founding Partners Capital Mgmt.*,
    639 F. Supp. 2d 1291 (S.D. Fla. 2009) ....................................................................8

*Shaw v. Dow Brands Inc.*,
    994 F.2d 364 (7th Cir. 1993) ....................................................................................9

*Sierra v. Bally Total Fitness Corporation*,
    2007 U.S. Dist. LEXIS 23729 (E.D.N.Y. Mar. 30, 2007).........................................9

*Thermoset Corp. v. Bldg. Materials Corp of Am.*,
    849 F.3d 1313 (11th Cir. 2017) ..........................................................................8, 16

*Thorn v. Amalgamated Transit Union*,
    305 F.3d 826 (8th Cir. 2002) ....................................................................................9

*Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349, et. al.*,
    427 F.2d 325 (5th Cir. 1970) ..................................................................................15

*Tumey v. Ohio*,
    273 U.S. 510 (1927)................................................................................................10

*Withrow v. Larkin*,
    421 U.S. 35 (1975)..................................................................................................10

**Statutes, Rules & Other Authorities:**

Fed. R. Civ. P. 12(b)(6)................................................................................................18

FINRA Rule 6490 ....................................................................................................3, 12

FINRA Rule 6490(d)(3)............................................................................................4, 12

Fla. Sta. § 48.193(1)(a) ........................................................................................................17

Fla. Stat.  § 48.193(1)(a)(1) .................................................................................................17

Fla. Stat. § (1)(a)(6) ............................................................................................................17

SEC Rule 15c2-11.................................................................................................................2

Plaintiff Inter-Coastal Waterways LLC ("Plaintiff" or "Inter-Coastal"), by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to Nominal Defendant The Financial Industry Regulatory Authority's ("Nominal Defendant" or "FINRA") motion to dismiss.

## PRELIMINARY STATEMENT

Plaintiff brought this action against TradeStation Securities, Inc. ("TradeStation" or "Defendant") for a breach of contract[1] relating to Plaintiff's Customer Account Agreement and TradeStation's Master Lending Agreement (together, the "Agreements").[2]  The Agreements contain a provision mandating arbitration before FINRA.  FINRA opens its memorandum in support of its motion to dismiss ("Motion") stating "Plaintiff does not allege any misconduct by FINRA."  Motion at 2.  This assertion by FINRA is demonstrably false.

Plaintiff does, in fact, allege multiple instances of misconduct perpetrated by FINRA in relation to its market regulatory activities surrounding the listing of Meta Materials, Inc.'s ("Meta Materials") Series A Preferred Dividend shares ("Dividend" or "MMTLP") on the OTC Market, and the subsequent halt of trading for "extraordinary circumstances" and delisting of MMTLP. *See* ECF 1 ("Complaint") at 16-21.  Although Plaintiff has set forth *substantial* misconduct on the part of FINRA, Plaintiff cannot, and does not allege any causes of action for liability against FINRA, nor does Plaintiff seek relief from FINRA.  Instead, Plaintiff names FINRA merely as a nominal defendant to this action because FINRA has a technical connection to the dispute between Plaintiff and TradeStation, being named as the mandatory, presumptively biased arbitrator

---

[1] In its Complaint, in addition to breach of contract, Plaintiff also alleged the following causes of action against TradeStation: (i) the remedy of rescission pursuant to Section 29(b) of the Exchange Act of 1934 for violations of 17 CFR § 240.15c3-3, (ii) violation of Fla. Stat. § 678.5041, (iii) violation of Fla. Stat. § 678.5071, (iv) violation of Fla. Stat. § 895.03, (v) violation of Fla. Stat. § 772.103, (vi) negligent misrepresentation, (vii) negligence per se, (viii) conversion, (ix) breach of fiduciary duty, (x) unjust enrichment and (xi) constructive trust.

[2] On July 9, 2024, TradeStation moved this Court to compel arbitration and stay this action.  ECF 29.  Plaintiff will be filing its opposition to TradeStation's motion in the coming days.

pursuant to the parties Agreements and FINRA's regulatory activities relating to MMTLP is the nexus from which the dispute between Plaintiff and TradeStation stems.

For the reasons set forth in this memorandum, Plaintiff respectfully requests that this Court deny FINRA's motion to dismiss.

## **FACTUAL BACKGROUND**

*FINRA Approved the Request of an Unidentified Broker for the Assignment of a Ticker Symbol to Meta Material's Series A Preferred Dividend Utilizing Outdated and Incorrect Information*

When FINRA assigns a ticker symbol to an unlisted security, the request must comply with SEC Rule 15c2-11 which sets forth the information required to be submitted by the broker requesting the quotation. Prior to trading on the Over-The-Counter Market ("OTC Market"), one or more unidentified brokers submitted a request to FINRA upon an "alleged" unsolicited indication of interest from a customer for the submission of a quotation of the Meta Materials' Dividend. In support of this request, the unidentified broker submitted outdated and incorrect information from 2012.[3] FINRA approved the request supported by outdated information and, on or about October 7, 2021, the Dividend began trading on the OTC Market under the symbol MMTLP.

*FINRA Improperly Modified Meta Materials' Notice of Corporate Action Prior to the U3 Halt*

On November 18, 2022, Next Bridge filed in the U.S. Securities and Exchange Commission's ("SEC") Electronic Data Gathering, Analysis and Retrieval ("EDGAR") System, a prospectus[4] notifying the public of the summary of the Next Bridge asset spin-off and share

---

[3] In an interview with Fox Business, former Chief Executive Officer of Torchlight Energy, John Brda, stated "I called OTC Markets and was advised at that time that FINRA approved [the listing], two market makers got together and listed it without company input and without the issuer knowing." Mr. Brda further asserts that MMTLP was listed on the OTC Markets using fraudulent information. *See* jtothebarno, John Brda on Fox Business with Charles Payne., YouTube (Dec. 12, 2022), https://www.youtube.com/watch?v=WuwOXE53fUs.

[4] *See* SEC filings, *i.e.*, Meta Materials, Inc., Prospectus (File No. 333-266143) (Nov. 18, 2022) (available at https://www.sec.gov/Archives/edgar/data/1936756/000119312522292114/d302576d424b4.htm#toc302576_2), at 1.

exchange.  In the prospectus, Next Bridge noted that every "one share of [MMTLP] outstanding as of close of business, New York City time, on December 12, 2022, the record date for the Spin-Off …, will entitle the holder thereof to receive one share of Common Stock."  In conjunction with the prospectus, on November 23, 2022, Meta Materials published a press release[5] indicating that, "on December 14, 2022 after the close of the trading markets, … all of the shares of Series A Preferred Stock will be automatically canceled."

On December 6, 2022, FINRA published a notice of Meta Materials' corporate action, which stated that MMTLP shares would continue trading until December 12, 2022, that the MMTLP shares would be *canceled* on December 13, 2022, and that Next Bridge shares would be distributed to MMTLP shareholders with settled positions as of December 12, 2022, on December 14, 2022.  *See* ECF 1-6, at 2.  Subsequently, on December 8, 2022, a revised notice of corporate action was published by FINRA, changing the language used by Meta Materials in the original corporate action to read, "MMTLP will be *deleted* effective 12/13/22", a revision that was not authorized by Meta Materials.  *See* ECF 1-6, at 1.  Notably, this revision deviates from the previous language used by Meta Materials in both its December 6, 2022 corporate action, as well as Meta Materials' November 23, 2022 press release.

In its motion to dismiss, FINRA notes that pursuant to FINRA Rule 6490, FINRA "reviews documents submitted by an issuer in connection with a company-related action and, if the documents are not deemed deficient, FINRA processes the request and provides notice of the company-related action through an announcement in the FINRA Daily List publication."  ECF 27 ("MTD") at 6.  FINRA "make[s] such deficiency determinations solely on the basis of one or

---

[5] *See* https://www.accesswire.com/728166/meta-materials-inc-board-of-directors-approves-planned-completion-of-the-spin-off-of-next-bridge-hydrocarbons-inc (last accessed July 31, 2024).

more" of the factors outlined in FINRA Rule 6490(d)(3), including whether "there is significant uncertainty in the settlement and clearance process for the security." FINRA Rule 6490(d)(3).

On December 9, 2022, FINRA enacted a U3 halt on the trading of MMTLP claiming there was "significant uncertainty in the settlement and clearing process" for the security.  MTD at 7, ECF 1-11, at 7.  In a public FAQ, FINRA stated that it had based its determination that there existed "significant uncertainty in the settlement and clearing process" on the circumstances that, after December 12, 2022, "the MMTLP shares would cease to be DTC-eligible; the MMTLP shares would be canceled by the issuer at the time of the distribution; and Next Bridge common stock was not expected to be DTC-eligible."  *See* ECF 1-11, at 7.  Despite FINRA itself actually revising Meta Materials' corporate action (exceeding its own powers of review) and having prior, actual knowledge of the "extraordinary event" which would lead to its determination to halt trading of MMTLP, FINRA failed to notify the public it would be enacting a halt three days prior to the cancellation of the MMTLP Shares, leading to the cause of the dispute between Plaintiff and TradeStation.

Further, according to FINRA's FAQ regarding MMTLP, dated March 16, 2023, the revision to Meta Materials' corporate action sparked confusion among retail investors.  After the halt was enacted and despite MMTLP's cancellation, FINRA's Trading Halt database continued to list MMTLP as halted between December 9, 2022 and February 16, 2023.  *See* ECF 1-11 at 3.  FINRA contends this supposed oversight was due to a "coding issue."  However, this oversight, which lasted for *two months*, gave retail investors, including Plaintiff, false hope that they would regain their last two trading days.

On December 23, 2023, 74 members of the House of Representatives signed a letter to the Chairman of the SEC, Gary Gensler, and the President and Chief Executive Officer of FINRA,

Robert Cook, requesting that the SEC and FINRA "review events surrounding Meta Materials Series A preferred shares," including "concerns regarding the circumstances surrounding the U3 halt and level of short selling in MMTLP" and "the existence of fraud and manipulation related to MMTLP transactions, such as illegal forms of naked shorts and counterfeit shares." *See* Complaint at 19, FN 16.  On January 31, 2024, FINRA responded to the Congressional letter stating it had "reviewed its members' U.S. trading activity in MMTLP, including short sale activity, and has found no evidence that there was *significant* naked short selling … in MMTLP." *Id.*, FN 17.  This statement directly contradicted FINRA's prior public statement in its Supplemental FAQ, dated November 6, 2023, in which FINRA stated there were no less than 2.65 million MMTLP shares shorted at the time MMTLP was halted which, to date, have not been covered and remain outstanding. *See* ECF 1-11, at 6.

<u>*TradeStation's Intimate Conflicting Connection to FINRA*</u>

On or about December 9, 2022, at the time of the MMTLP U3 halt, TradeStation's Chief Compliance Officer Nikki Brinkerhoff was, and to date is, an industry representative sitting on FINRA's South Regional Committee for District 7.[6]  FINRA's Regional Committees "advise FINRA on industry trends of regulatory concern, provide input on the impact of FINRA's regulatory programs and communicate high-level information regarding meeting discussions to their constituents," as well as serving as panelists in FINRA's disciplinary proceedings.  As a Regional Committee representative Brinkerhoff's responsibilities include advising FINRA on regulatory trends and impacts, communicating key information and serving as a disciplinary panelist.

---

[6] *See* https://www.finra.org/about/governance/regional-committees (last accessed July 31, 2024).

Following the halt, Ms. Brinkerhoff led a discussion on the Next Bridge S-1 filing for the Financial Information Forum (FIF), a body including broker-dealers, market makers, and SROs, which discussed MMTLP (Next Bridge Hydrocarbons).  On February 23, 2024, Ms. Brinkerhoff spoke at an event hosted by FINRA on topics including arbitration, enforcement, and compliance. This speaking engagement lends to the complication of FINRA's neutrality, given Ms. Brinkerhoff's influence on arbitration and enforcement actions as a representative of TradeStation at the time of the U3 halt.[7]

During the week of January 22, 2024, FIF members received document requests from both SEC and FINRA examination groups relating to the Next Bridge Hydrocarbons and Meta Materials reorganization.  FIF solicited responses from member brokers to gauge the number of firms receiving such inquiries, promising to maintain anonymity.

Despite TradeStation's admission to over-lending MMTLP shares, Ms. Brinkerhoff was promoted to FINRA's Uniform Practice Code ("UPC") Advisory Committee.  The UPC Advisory Committee is responsible for advising and making recommendations to FINRA regarding issues relating to the Uniform Practice Code and Over-The-Counter market trading, processing and operations.  As FINRA states on its website, the UPC Advisory Committee "considers issues related to the clearance and settlement of OTC securities transactions," such as the implementation of the U3 halt of MMTLP due to "significant uncertainty in the settlement and clearance process." Ms. Brinkerhoff's dual roles on FINRA's Regional and UPC Advisory Committees present clear conflicts of interest, as her role would have allowed her to advise FINRA during the U3 halt and now influence the UPC Advisory Committee's decisions.  Her promotion, despite TradeStation's

---

[7] Ms. Brinkerhoff's panel discussion of Next Bridge is certainly not a coincidence.  The Next Bridge securities were born from the MMTLP security and, optically, the concern FINRA had for its member brokers' sentiment toward Next Bridge seems greater than its concern for the harm suffered by retail investors.

over-lending of MMTLP shares, questions her impartiality in regulatory decisions, as well as FINRA's bias as an arbitrator to the dispute between Plaintiff and TradeStation.[8]

The coordination among FIF members and discreet regulatory handling suggests potential collusion undermining fair processes and Ms. Brinkerhoff's involvement in regulatory decisions and forums raises concerns about impartiality, necessitating this action be heard in front of this Court as Plaintiff seeks a non-biased judicial resolution to its dispute against TradeStation.

<u>*FINRA's Material Misstatements In Its Motion to Dismiss*</u>

In its Motion, FINRA states that it does not "own or operate a stock market," nor does it "execute securities transactions on behalf of customers."  Motion to Dismiss at 4.  This is an unfortunate misstatement on the part of FINRA.  FINRA, in part, operates a trading process known as the Over-The-Counter Unlisted Trading Privilege Plan ("UTP Plan").[9]  The UTP Plan oversees programs known as the Securities Information Processor ("SIP") and Alternative Display Facility ("ADF") which are core components of the United States' financial market infrastructure.  Under the UTP Plan, "all U.S. exchanges and associations that quote and trade NASDAQ-listed securities must provide their data to a centralized SIP for data consolidation and dissemination."[10]  The SIP processes and consolidates "all protected bid/ask quotes and trades from every trading venue into a single, easily consumed data feed."  Critically, the SIP "disseminates and calculates critical regulatory information including the National Best Bid and Offer (NBBO), and Limit Up Limit Down (LULD) price bands among other important regulatory information such as short sale restrictions, and regulatory halts."  FINRA's ADF "provides members with a facility for the

---

[8] Despite FINRA's November 6, 2023 Supplemental MMTLP FAQ stating that at the time of the U3 halt there were outstanding short positions of no less than 2.65 million shares which, to date (more than 600 days from the event), have yet to be covered, FINRA has failed to prosecute *any* disciplinary administrative action against its member brokers, including TradeStation.

[9] *See* https://www.utpplan.com/overview (last accessed July 31, 2024).

[10] *See* https://www.finra.org/rules-guidance/guidance/national-market-system-plans (last accessed July 31, 2024).

display of quotations, the reporting of trades, and the comparison of trades."[11]  Further, as stated on the UTP Plan's website, pursuant to the UTP Plan, FINRA "is the owner of the OTC eligible securities" which are "administered as part of the UTP Plan Administrator role."[12]

**ARGUMENT**

## I.   **FINRA IS PROPERLY NAMED AS A NOMINAL DEFENDANT TO THIS ACTION**

"There is no bright-line rule for distinguishing between real and nominal parties." *Lopez v. Martens*, 2020 U.S. Dist. LEXIS 175911, at *5 (S.D. Fla. Sept. 24, 2020) (*quoting Thermoset Corp. v. Bldg. Materials Corp of Am.*, 849 F.3d 1313, 1317 [11th Cir. 2017]).  "The Eleventh Circuit has defined 'nominal or formal parties' as those that are 'neither necessary nor indispensable' to the action." *Id.*  "An entity whose involvement as a defendant in a case has no bearing on the outcome. The entity is usually called upon due to court procedures mandating its presence in the case." *Nominal Party*, Black's Law Dictionary.[13]  "In order for a party to be deemed 'nominal' for the purposes of subject matter jurisdiction, it must have no ownership interest in the property that is the subject of the litigation." *Chusid v. Swire Pac. Holdings, Inc.*, 2010 U.S. Dist. LEXIS 148297, at *16 (S.D. Fla. July 16, 2010) (*citing Janvey v. Adams*, 588 F.3d 831, 834 [5th Cir. 2009]); *see also CIC Contrutora, Inc. v. Beccari*, 2018 U.S. Dist. LEXIS 122973, at *6-7 (S.D. Fla. July 20, 2018) ("A nominal party 'is one who has no interest in the result of the suit and need not have been made a party thereto'").  No cause of action is asserted against a nominal defendant. *See SEC v. Founding Partners Capital Mgmt.*, 639 F. Supp. 2d 1291, 1293 (S.D. Fla. 2009) (*quoting CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192 [4th Cir. 2002]).  "[A] nominal defendant is one 'against whom no real relief is sought.'  Or, in other

---

[11] *See* https://www.finra.org/filing-reporting/alternative-display-facility-adf (last accessed July 31, 2024).
[12] *See* https://www.utpplan.com/technical (last accessed July 31, 2024).
[13] *See* https://thelawdictionary.org/nominal-party/ (last accessed July 31, 2024).

words, '[a] defendant is nominal if there is no reasonable basis for predicting that it will be held liable.'" *Multiplan USA Corp. v. Waltham Assets, Ltd.*, 2016 U.S. Dist. LEXIS 199488, at *5-6 (S.D. Fla. Mar. 22, 2016) (*citing Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 833 [8th Cir. 2002]; *Shaw v. Dow Brands Inc.*, 994 F.2d 364, 369 [7th Cir. 1993]).

**A. Plaintiff Named FINRA as a Nominal Defendant Because FINRA is a Named Third Party to the Agreements**

"Determining nominal party status is a practical inquiry, focused on the particular facts and circumstances of a case ...." *Hartford Fire Ins. v. Harleysville Mut. Inc. Co.*, 736 F.3d 255, 260 (4th Cir. 2013). "[T]he key inquiry is whether the suit can be resolved without affecting the non-consenting nominal defendant in any reasonably foreseeable way." *Id.*

Parties that have qualified as nominal include "**an arbitrator** whose decision was sought to be vacated, . . . a defendant against whom no claim was asserted, . . . and a party not in a position to provide the injunctive relief requested by the plaintiff." *Metro. Transp. Auth. v. U.S. Fid. & Guar. Co.*, 2015 U.S. Dist. LEXIS 48801 at *5 (S.D.N.Y. Apr. 14, 2015); *see also Sierra v. Bally Total Fitness Corporation*, 2007 U.S. Dist. LEXIS 23729, at *2 (E.D.N.Y. Mar. 30, 2007) (holding that **an arbitrator** was a nominal party in an action brought to vacate an arbitration award because it was clear that he had no interest in the outcome of the litigation.).

Similar to a third-party beneficiary specifically named in a contract, FINRA has been named as a nominal defendant to this action because FINRA was named in the Agreements as the arbitrator to the dispute between Plaintiff and TradeStation pursuant to the mandatory arbitration provisions. Complaint, ¶ 69; ECF 1-2 at 16, ECF 1-6 at 14. However, the controversy and causes of action Plaintiff alleges against TradeStation stem directly from the specific actions taken by FINRA in its capacity as a market regulator between December 6, 2022 and December 14, 2022, namely unlawfully exceeding its authority by changing Meta Materials' December 6, 2022 notice

of corporate action and the enactment of the U3 halt on the MMTLP ticker, preventing TradeStation from re-acquiring Plaintiff's loaned shares.  Complaint, ¶ 70-72; ECF 1-6.

Although FINRA does not have an interest in the outcome of this dispute, FINRA's actions are the nexus from which the dispute between Plaintiff and TradeStation arises because, but for the specific regulatory actions taken by FINRA in relation to MMTLP, the instant dispute could not have occurred.

**B.  Plaintiff Named FINRA as a Nominal Defendant Because FINRA Can Not Act as an Unbiased Alternative Dispute Resolution Service in the Dispute Between Plaintiff and TradeStation**

"A fair trial in a fair tribunal is a basic requirement of due process."  *In re Murchison*, 349 U.S. 133, 136 (1955).  The fairness demanded by due process "requires an absence of actual bias in the trial of cases."  *Id*.  "Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the possibility of unfairness."  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (quoting *Murchison*, 349 U.S. at 136; *cf. Tumey v. Ohio*, 273 U.S. 510, 532 (1927)).  Generally, a nominal party is named to facilitate a plaintiff's recovery of relief.  *See Chusid*, 2010 U.S. Dist. LEXIS 148297, at *17 (*citing Kimberlynn Creek Ranch*, 276 F.3d at 191 ("A 'nominal defendant' is a person who can be joined to aid the recovery of relief without an additional assertion of subject matter jurisdiction only because he has no ownership interest in the property which is the subject of litigation").

In its Motion, FINRA argues that it was named as a nominal defendant "to avoid application of case law holding there is no private right of action against FINRA."  Motion at 10. Plaintiff asserts this argument is untrue, and flatly unfounded in this case. FINRA's argument regurgitates the law - but in this case, no claims are made against FINRA so it is creating an apparent dispute where one doesn't exist.  While FINRA is not an entity which holds assets or funds which would be recoverable, as FINRA suggests is required, FINRA is required to be joined

as a nominal defendant "to aid in the recovery of relief."  *See SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991); Motion at 10.  Here, Plaintiff was required to name FINRA as a nominal defendant to facilitate the recovery of relief.  Specifically, FINRA is a third party named in the Agreements to be the mandatory arbitrator to the dispute between Plaintiff and TradeStation.  Plaintiff requires this dispute to be litigated before this Court as FINRA would be demonstrably biased as the arbitration service specified in the Agreements and, if the Court ultimately finds that FINRA is biased, the Court's impartial decision would be binding on both Plaintiff and TradeStation.

C.  **FINRA's Unlawful Revision of Meta Materials' December 6, 2022 Notice of Corporate Action and the Subsequent U3 Halt**

On November 18, 2022, Next Bridge filed in the U.S. Securities and Exchange Commission's ("SEC") Electronic Data Gathering, Analysis and Retrieval ("EDGAR") System, a prospectus[14] notifying the public of the summary of the Next Bridge asset spin-off and share exchange.  In the prospectus, Next Bridge noted that every "one share of [MMTLP] outstanding as of close of business, New York City time, on December 12, 2022, the record date for the Spin-Off …, will entitle the holder thereof to receive one share of Common Stock."  In conjunction with the prospectus, on November 23, 2022, Meta Materials published a press release[15] indicating that, "on December 14, 2022 after the close of the trading markets, … all of the shares of Series A Preferred Stock will be automatically canceled."

On December 6, 2022, FINRA published a notice of Meta Materials' corporate action, which stated that MMTLP shares would continue trading until December 12, 2022, that the MMTLP shares would be *canceled* on December 13, 2022, and that Next Bridge shares would be

---

[14] *See* SEC filings, *i.e.*, Meta Materials, Inc., Prospectus (File No. 333-266143) (Nov. 18, 2022) (available at https://www.sec.gov/Archives/edgar/data/1936756/000119312522292114/d302576d424b4.htm#toc302576_2), at 1.
[15] *See* https://www.accesswire.com/728166/meta-materials-inc-board-of-directors-approves-planned-completion-of-the-spin-off-of-next-bridge-hydrocarbons-inc (last accessed July 31, 2024).

distributed to MMTLP shareholders with settled positions as of December 12, 2022, on December 14, 2022. *See* ECF 1-6, at 2. Subsequently, on December 8, 2022, a revised notice of corporate action was published by FINRA, changing the language used by Meta Materials in the original corporate action to read, "MMTLP will be *deleted* effective 12/13/22", a revision that was not authorized by Meta Materials. *See* ECF 1-6, at 1. Notably, this revision deviates from the previous language used by Meta Materials in both its December 6, 2022 corporate action, as well as Meta Materials' November 23, 2022 press release.

In its motion to dismiss, FINRA notes that pursuant to FINRA Rule 6490, FINRA "*reviews documents* submitted by an issuer in connection with a company-related action and, if the documents are not deemed deficient, FINRA processes the request and provides notice of the company-related action through an announcement in the FINRA Daily List publication." ECF 27 ("MTD") at 6. FINRA "make[s] such deficiency determinations solely on the basis of one or more" of the factors outlined in FINRA Rule 6490(d)(3), including whether "there is significant uncertainty in the settlement and clearance process for the security." FINRA Rule 6490(d)(3). Although FINRA's Rules, as well as FINRA's Motion, specifically states that it merely *reviews* documents submitted by an issuer, on December 8, 2022, Meta Materials announced that "FINRA has revised" Meta Materials' notice of corporate action.[16] FINRA *unilaterally revised* Meta Materials' notice of corporate action in violation of FINRA Rule 6490, and such revision exceeded its regulatory authority as the revision was made without the input or approval of Meta Materials.

On December 9, 2022, FINRA enacted a U3 halt on the trading of MMTLP as there was "significant uncertainty in the settlement and clearing process" for the security. MTD at 7, ECF

---

[16] *See* https://www.accesswire.com/730989/meta-materials-announces-finra-has-revised-corporate-action-for-exchange-of-series-a-preferred (last accessed July 31, 2024).

1-11, at 7.[17]  In a public FAQ, FINRA stated that it had based its determination that there existed

"significant uncertainty in the settlement and clearing process" on the circumstances that, after

December 12, 2022, "the MMTLP shares would cease to be DTC-eligible; the MMTLP shares

would be canceled by the issuer at the time of the distribution; and Next Bridge common stock

was not expected to be DTC-eligible."  *Id*.  Despite revising Meta Materials' corporate action and

having prior, actual knowledge of the "extraordinary event" which would lead to its determination

to halt trading of MMTLP, FINRA failed to notify the public or Meta Materials that it would be

enacting a halt, leading to the dispute between Plaintiff and TradeStation and an open short interest

of no less than 2.65 million shares at the time MMTLP ceased trading which, to date, has not been

covered.[18]

**D.** **FINRA Was Aware of Fraudulent Market Activity Occurring Amongst Its Member Brokers.  However, FINRA Failed to Initiate Disciplinary Proceedings Against These Brokers**

Despite having knowledge of fraudulent activity occurring among its member brokers and

communicating this knowledge with the SEC, FINRA failed to discipline its member brokers for

illegal or unethical market activity relating to MMTLP.  As a self-regulatory organization

authorized by Congress, FINRA's primary responsibility in the regulation of the financial market

is the oversight and discipline of its member broker-dealers.  Electronic Blue Sheets are one of the

investigative tools used by FINRA to monitor and detect illegal, fraudulent or unethical behavior

of its member firms.

---

[17] It is Plaintiff's belief that, despite FINRA's claim that the U3 halt was enacted to "protect retail investors," FINRA's intent behind enacting the halt was, instead, to protect its member brokers from expending billions of dollars covering their open short positions within the normal settlement period which, over 600 days later, have not been resolved.
[18] FINRA has failed to initiate any disciplinary action against its member brokers, including TradeStation, for the admitted failures of its member brokers to cover no less than 2.65 million shares shorted, as well as for failures to maintain physical possession of its customer's securities, such as TradeStation's failure to maintain Plaintiff's Next Bridge shares.

On or about December 16, 2022, a Freedom of Information Act request was submitted to the SEC by a member of the investing public which revealed that on December 5, 2022, FINRA noted in an email to the SEC it was made aware of fraud being committed pertaining to MMTLP as it was "bluesheeting" its member broker-dealers relating to MMTLP prior to the enactment of the U3 halt. *See* Complaint, ¶ 77, ECF 1-6 at 4.

On December 23, 2023, 74 members of the House of Representatives signed a letter to the Chairman of the SEC, Gary Gensler, and the President and Chief Executive Officer of FINRA, Robert Cook, requesting that the SEC and FINRA "review events surrounding Meta Materials Series A preferred shares," including "concerns regarding the circumstances surrounding the U3 halt and level of short selling in MMTLP" and "the existence of fraud and manipulation related to MMTLP transactions, such as illegal forms of naked shorts and counterfeit shares." *See* Complaint at 19, FN 16. On January 31, 2024, FINRA responded to the Congressional letter stating it had "reviewed its members' U.S. trading activity in MMTLP, including short sale activity, and has found no evidence that there was *significant* naked short selling … in MMTLP." *Id.*, FN 17. FINRA's open-ended response to Congress cannot be read to say it did not find *any* naked short selling by its member brokers. Rather, FINRA's statement clearly shows they did find their members to be naked short selling MMTLP shares, yet FINRA failed to effectively discipline its member brokers for their findings.

### E. <u>A TradeStation Representative Sat on FINRA's Regional Advisory Committee on December 9, 2022</u>

FINRA's Board of Governors is composed of "23 industry and public members, with 10 seats designated for industry members, 12 seats designated for public members and one seat reserved for FINRA's Chief Executive Officer."[19] In addition to its Board of Governors, FINRA's

---

[19] *See* https://www.finra.org/about/governance/finra-board-governors (last accessed July 31, 2024).

governance includes various advisory committees which stand to "provide feedback on rule proposal, regulatory initiatives and industry issues,"[20] as well as regional committees which "advise FINRA on industry trends of regulatory concern, provide input on the impact of FINRA's regulatory programs and communicate high-level information regarding meeting discussions to their constituents."[21]

Among the members of FINRA's regional committees, TradeStation is represented by Nikki Brinkerhoff ("Brinkerhoff"), TradeStation's Chief Compliance Officer on or about December 9, 2022. On December 9, 2022, at the time of the U3 halt, Brinkerhoff sat on FINRA's Regional Committee for the South Region, District 7. Subsequently, Brinkerhoff was elected to FINRA's UPC Advisory Committee and, as a member of the UPC committee, Ms. Brinkerhoff plays a role in advising FINRA on "issues relating to the settlement and clearance of OTC securities transactions."

Further, Defendant notes that FINRA's Market Regulation Department was "the department that likely administered the MMTLP trading halt." Motion at 9-10. Although FINRA, as a self-regulatory organization, cannot be held liable for its regulatory activities, it is clear FINRA is an evidently biased arbitrator to the dispute between Plaintiff and TradeStation as this previous connection between FINRA and TradeStation demonstrates a clear tie between both parties. This cannot stand.

**F. <u>FINRA's Participation in this Action as a Nominal Defendant Has No Bearing on the Action's Ultimate Outcome</u>**

"The question of whether or not a named [party] is a nominal party depends on the facts in each case." *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349,*

---

[20] *See* https://www.finra.org/about/governance/advisory-committees (last accessed July 31, 2024).
[21] *See* https://www.finra.org/about/governance/regional-committees (last accessed July 31, 2024).

*et. al.*, 427 F.2d 325, 327 (5th Cir. 1970). The "ultimate test" for whether a defendant is nominal, according to the Eleventh Circuit, is whether, in the defendant's absence, the court could enter a final judgment consistent with equity and good conscience and not in any way unfair or inequitable to the plaintiff. *See Thermoset Corp. v. Bldg. Materials Corp.*, 849 F.3d at 1317–1318.

As a self-regulatory organization, FINRA enjoys immunity from liability for actions taken in its role as a market regulator. Due to this immunity, Plaintiff does not, and cannot allege any cause of action or theory of liability against FINRA and cannot name FINRA as a party defendant to this action. However, Plaintiff has every right to highlight the regulatory activities of FINRA and call into question its actions as they affected the MMTLP security. Due to FINRA's perceived bias in its role as arbitrator to this dispute, and based on the contract between the real parties in interest naming FINRA as the arbitration platform to resolve disputes, Plaintiff may and must, however, name FINRA as a nominal defendant.

Should FINRA's motion to dismiss be denied, FINRA's further participation in this action would be entirely optional. This dispute is entirely between Plaintiff and TradeStation. As such, should FINRA remain in this action as a nominal defendant and not participate in any further proceedings, the ultimate outcome of this action would not be affected. This Court, in good conscience and equity, can enter a fair and equitable final judgment in favor of either Plaintiff or TradeStation with or without FINRA's participation. Dismissal as a nominal defendant for a failure to state a claim would be inappropriate because, by definition, Plaintiff cannot, and did not allege claims against FINRA.

## II.      THIS COURT HOLDS PERSONAL JURISDICTION OVER FINRA

### A.   Although FINRA is Merely a Nominal Defendant, FINRA's Activities Affected Plaintiff Within the State of Florida, Establishing Personal Jurisdiction Pursuant to Florida's Long Arm Statute

"Under Florida's long-arm statute, a court may exercise specific personal jurisdiction over a non-resident defendant who is engaging in one of the enumerated acts listed under Fla. Sta. § 48.193(1)(a)." *Happy Tax Franchising, LLC v. Hill*, 2020 U.S. Dist. LEXIS 162416, at *28 (S.D. Fla. Sept. 2, 2020).  Under Fla. Stat. § 48.193(1)(a), "[a] person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from … [o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state" or  "[c]ausing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, … the defendant was engaged in solicitation or service activities within this state." *See* Fla. Stat.  § 48.193(1)(a)(1) and Fla. Stat. § (1)(a)(6).

In its Motion, FINRA argues that it is not subject to specific personal jurisdiction in Florida because "Plaintiff's claims have no connection to FINRA's alleged contacts in Florida."  Motion at 14.  This claim is patently false.  FINRA's connection to Florida has also been facilitated by an intimate relation with TradeStation as Nikki Brinkerhoff, Chief Compliance Officer of TradeStation, was a member of FINRA's South Regional Committee for District 7 on December 9, 2022 and, to date, remains on FINRA's South Regional Committee and currently sits as one of four members of FINRA's UPC Advisory Committee, advising and making recommendations to FINRA on "issues relating to the UPC and over-the-counter (OTC) market trading, processing and operations."

17

Further, FINRA is a corporation actively registered to conduct business in Florida and operates a significant office located in Boca Raton, Florida, noting it "operate[s] in the communities where firms do business and disputes actually occur."[22]  Plaintiff's injury and dispute with TradeStation arises from FINRA's market regulatory activities, i.e. the "services" FINRA provides to the market, the investing public and its member brokers, including those residing in Florida.  Specifically, according to FINRA's BrokerCheck website, FINRA regulates TradeStation *specifically* from its Florida district office.[23]  The absolute failure of FINRA's Florida district office to properly regulate TradeStation's broker activities, such as TradeStation's failure to maintain a proper amount of physical Next Bridge share certificates and TradeStation's lending of MMTLP shares in excess of the amount held on record for the benefit of its customers, gave rise to Plaintiff's injury and associated claims against TradeStation.

## III.     PLAINTIFF "FAILURE TO STATE A CLAIM" AGAINST FINRA IS IRRELEVANT AS FINRA IS A NOMINAL PARTY

### A.   Plaintiff Does Not, and Can Not Allege Any Theory of Liability Against Nominal Defendant FINRA and an Amendment to the Complaint is Unnecessary

"A motion to dismiss under Rule 12(b)(6) merely tests the sufficiency of the complaint; it does not decide the merits of the case."  *Guy Roofing, Inc. v. Angel Enters., LLC*, 2017 U.S. Dist. LEXIS 144994, at *3 (S.D. Fla. sept. 5, 2017) (*citing Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984).  "When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff." *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[22] *See* https://www.finra.org/about/locations (last accessed July 31, 2024).
[23] *See* https://brokercheck.finra.org/firm/summary/39473 (last accessed July 31, 2024).

(2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'").

FINRA vehemently argues that Plaintiff "failed to state a claim upon which relief can be granted" as Plaintiff's Complaint "does not allege any actionable wrongdoing by FINRA." Motion at 8.  FINRA is correct.  Plaintiff does not, and cannot allege any theory of liability or cause of action against FINRA for its actions taken as a market regulator.  Instead, due to FINRA being named as the arbitrator to the dispute between Plaintiff and TradeStation, FINRA is merely named as a nominal defendant.  However, this argument seems to want to steer the court in a direction that is a dead end.  Seasoned counsel knows, or should know that the complaint, on its face, presents no claims at all against FINRA, and moving under Rule 12 would be inapplicable.

FINRA argues that, should Plaintiff request permission to amend its Complaint to allege a private right of action against FINRA, such a "proposed amendment would be futile."  Motion at 17.  Plaintiff asserts that this argument is also a non-issue and is another misdirection or at the very least, presents a misunderstanding of the complaint.  By definition, FINRA is a nominal party to the dispute between Plaintiff and TradeStation because FINRA's participation in this action will not affect the ultimate outcome of the dispute between Plaintiff and TradeStation.

FINRA is connected to the dispute as a third-party named as the mandatory arbitrator in the parties Agreements pursuant to the arbitration provision.  However, Plaintiff does not, and cannot allege a private cause of action against FINRA.  Plaintiff does not intend on requesting permission to amend its Complaint to assert any causes of action against FINRA or to name FINRA as a real party in interest.  Plaintiff, instead, maintains that FINRA is properly named as a nominal defendant due to its contractual provision with TradeStation and the evident bias as an arbitrator

to the dispute, as well as being the nexus from which the dispute between Plaintiff and TradeStation arises.

<div align="center">**<u>CONCLUSION</u>**</div>

This complicated matter has a long history starting in October 2021 when the MMTLP Shares were first listed on the OTC Markets, through approval by FINRA.  It traded for 14 months until December 9, 2022.  To this day, Plaintiff, as well as 65,000 other holders of the MMTLP Shares have received no answers from the regulators, including FINRA.  Congressional efforts, hearings and demand letters have all been sidestepped by FINRA and various lawsuits brought directly against FINRA to hold it responsible have all been dismissed.  FINRA is a self-regulatory organization and, as such, is controlled by the very brokers it was designed by Congress to supervise and regulate, including TradeStation.  FINRA has, so far, failed to demonstrate it is not biased and has failed to articulate why information requested for more than 600 days has not been provided. By its very existence, there is an implicit bias to protect its member brokers.  The Complaint in this action avers no claims against FINRA, and no relief sought against FINRA.  For the reasons set forth herein, Plaintiff respectfully requests that the Court deny Nominal Defendant The Financial Industry Regulatory Authority's Motion to Dismiss it from its lawsuit against TradeStation.

<div style="margin-left: 40%;">

Respectfully Submitted,

**THE BASILE LAW FIRM P.C.**

*/s/ Agapija Cruz*
Agapija Cruz, Esq.
Florida Bar No.: 1027984
365 Fifth Avenue S., Suite 202
Naples, Florida 33472
Tel.:    (239) 232-8400
Fax:    (631) 498-0478
Email: agapija@thebasilelawfirm.com

</div>

<div align="center">20</div>

Joseph F. Rose, Esq. *(admitted Pro Hac Vice)*
390 N. Broadway, Ste. 140
Jericho, New York 11753
Tel.:    (516) 455-1500
Fax:     (631) 498-0478
Email: joe@thebasilelawfirm.com

*Counsel for Plaintiff Inter-Coastal Waterways LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 31st day of July 2024, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

<div align="right">

*/s/ Agapija Cruz*_____
Agapija Cruz, Esq.

</div>