UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-60891-Civ-AHS

INTER-COASTAL WATERWAYS, LLC,

        **Plaintiff,**

v.

TRADESTATION SECURITIES, INC.,
and DOE DEFENDANTS 1-10,

        **Defendants,**

    and

FINANCIAL INDUSTRY REGULATORY
AUTHORITY, INC.

        **Nominal Defendant.**
_____/

## FINRA'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

Nominal Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"), respectfully submits this reply in further support of its motion to dismiss [ECF No. 27].

### Introduction

In its opposition, Plaintiff argues that its complaint contains allegations of "misconduct" by FINRA, and therefore the motion to dismiss should be denied. However, Plaintiff misses the point. It is axiomatic that the only misconduct relevant to the Court's analysis is *actionable misconduct*. Plaintiff admits this does not exist. Indeed, the complaint fails to articulate any actionable misconduct whatsoever by FINRA and makes no claim for relief against FINRA. Instead, Plaintiff asserts that it named FINRA as a nominal defendant because of a technical

connection to its dispute with TradeStation Securities, Inc. ("TradeStation"). Plaintiff concedes that FINRA's presence in the case is not necessary for either Plaintiff or TradeStation to obtain relief in this case. For these and the other reasons discussed herein, the complaint should be dismissed with prejudice as to FINRA.

## I. FINRA's PARTICIPATION IN THIS CASE IS NOT NECESSARY

### A. Plaintiff Concedes FINRA's Dismissal Would Not Affect the Outcome.

Plaintiff fails to articulate any legitimate reason for FINRA to be named as a defendant in this case, nominal or otherwise. The actions FINRA is alleged to have taken in connection with the underlying facts are regulatory activities for which it is absolutely immune. FINRA is not alleged to be holding any funds or property at issue. And FINRA has no interest in the outcome of this case. These facts are not disputed. Moreover, Plaintiff concedes that FINRA's participation in the case is not necessary for it or TradeStation to obtain relief, and FINRA's involvement "has no bearing on the action's ultimate outcome." Opp. at 15-16 [ECF No. 33].

Despite Plaintiff's fatal concession that FINRA is unnecessary to the litigation's outcome, Plaintiff nonetheless alleges that FINRA's regulatory activities related to MMTLP prevents FINRA from being an unbiased arbitrator, concluding without authority, that FINRA "must" therefore be named as a nominal defendant due to "[FINRA's] perceived bias in its role as arbitrator to this dispute . . ." *Id*. at 16. For numerous reasons, Plaintiff's argument is unavailing.

### 1. FINRA Has Dual Roles in the Securities Industry.

As a preliminary matter, Plaintiff misrepresents FINRA's role, both generally and specifically, with respect to this case. FINRA has two distinct and independent functions in the regulation of its member firms and the over-the-counter securities markets.

First, FINRA is part of the Securities Exchange Act of 1934's ("Exchange Act") comprehensive scheme for regulating the securities markets. *See* 15 U.S.C. §§ 78q, 78s; *Desiderio v. NASD,* 191 F.3d 198, 201 (2d Cir. 1999); *PennMont Secs. v. Frucher,* 586 F.3d 242, 245 (3d Cir. 2009). The Exchange Act requires most persons who wish to engage in a business of transacting in securities to join a registered association of brokers and dealers, such as FINRA. 15 U.S.C. § 78o(a)(1), (b)(1); 17 C.F.R. § 240.15b7-1. Subject to SEC oversight, FINRA reviews the qualifications of broker-dealer firms, and their individual registered representatives, seeking to enter the industry, adopts rules that govern FINRA members, and enforces compliance with those rules as well as securities laws. 15 U.S.C. §§ 78o-3(b)(2), 78s(b), 78s(g)(1), & 78s(h).

Separately, FINRA administers a neutral arbitration forum to resolve securities-related disputes. FINRA's Codes of Arbitration Procedure, which the SEC has approved, govern arbitrations administered in the FINRA forum.[1] 15 U.S.C. § 78s(b); *Shearson/Am. Express v. McMahon,* 482 U.S. 220, 233–34 (1987) (the SEC has "expansive power to ensure the adequacy of the arbitration procedures employed by [an SRO]"). In its capacity as the forum administrator, FINRA sets hearing dates and locations, appoints arbitrators (subject to peremptory and for-cause challenges from the parties), and forwards pleadings between parties and arbitrators. *See, e.g.*, *Roganti v. Ketchum*, No. FBTCV166056970, 2017 WL 690324 (Conn. Super. Ct. Jan. 9, 2017); Arbitrator's Guide, at 10–11.

In its opposition, Plaintiff contends that while FINRA "cannot be held liable for its regulatory activities, it is clear FINRA is an evidently biased arbitrator to the dispute between

---

[1] FINRA Dispute Resolution Services Arbitrator's Guide (Feb. 2021) ("Arbitrator's Guide"), *available at* https://www.finra.org/sites/default/files/arbitrators-ref-guide.pdf

3

Plaintiff and TradeStation as this previous connection between FINRA and TradeStation demonstrates a clear tie between both parties." Opp. at 15.  Plaintiff's improper conflation of FINRA's dual roles in the securities industry does not create a legitimate basis to name FINRA as a nominal defendant in this case.

### 2. FINRA is *Not* the Arbitrator That Would Decide the Dispute Between Plaintiff and Defendant TradeStation.

Plaintiff's opposition to FINRA's motion to dismiss rests entirely upon the false premise that FINRA is the mandatory arbitrator named in the parties' arbitration agreement.  Opp. at 1-2; *see also id.* at 9, 11, 16, 19.  FINRA, however, is *not* the arbitrator that the parties selected. Instead, FINRA is the *forum* in which the parties agreed "any and all controversies, claims or disputes relating to [Plaintiff's] Account" would be resolved.  Compl. ¶ 69; *see also id.,* Exh. 9 at 14-15.  Pursuant to the FINRA's Codes of Arbitration Procedure, parties to an arbitration "select their panel through a process of striking and ranking the arbitrators on lists generated" by FINRA using a list selection algorithm.  FINRA Rule 13400.[2]  Arbitrators selected by the parties to hear disputes administered in FINRA's dispute resolution forum are *not* FINRA employees; instead, they are independent contractors.  *See* Arbitrator's Guide at 11–12; *see also* FINRA Rule 13214.[3]  FINRA has no role in deciding the disputes submitted to its forum.  Instead, awards rendered by arbitrators "shall be in writing and signed by a majority of the arbitrators or as required by applicable law."  FINRA Rule 13904.[4]

---

[2] FINRA Rule 13400 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/13400.

[3] FINRA Rule 13214 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/13214.

[4] FINRA Rule 13904 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/13904.

4

Further, Plaintiff concedes that "[t]his Court, in good conscience and equity, can enter a fair and equitable final judgment in favor of either Plaintiff or TradeStation with or without FINRA's participation." Opp. at 16. Accordingly, Plaintiff's admission demonstrates that FINRA is not properly named as a nominal defendant in this case, and the complaint should be dismissed with prejudice against FINRA.

### 3. FINRA is Not a Party to the Arbitration Agreement.

Despite Plaintiff's suggestion to the contrary,[5] FINRA is not a third party to the arbitration agreement between Plaintiff and TradeStation. *See* Compl. ¶ 69; *see also id.,* Exh. 9 at 14-15. Instead, as discussed above, Plaintiff and TradeStation agreed that any disputes between them must be arbitrated in FINRA's dispute resolution forum and pursuant to FINRA's arbitration rules. *Id.* Accordingly, as Plaintiff concedes, it is not necessary for FINRA to be named in this case for the remaining parties to obtain relief.

## II. ANY PURPORTED BIAS IS SPECULATIVE AND CONCLUSORY

In its opposition, Plaintiff asserts that "Plaintiff requires this dispute to be litigated before this Court as FINRA would be demonstrably biased as the arbitration service specified in the Agreements."[6] Opp. at 11. The complaint, however, fails to identify any actual bias and instead

---

[5] *See, e.g.*, Opp. at 9 ("FINRA is a named third party to the [arbitration] agreements.") and 11 ("FINRA is a third party named in the agreements to be the mandatory arbitrator to the dispute between Plaintiff and Tradestation.").

[6] While the case is inapposite since FINRA is not the arbitrator here, the Plaintiff misquotes the Supreme Court's opinion in *Withrow* at page 10 of its Opposition. The correct quote is: "Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.'" *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (citations omitted). Plaintiff substituted the word "possibility" for the correct word "probability."

5

relies on allegations of "perceived bias" that are speculative and conclusory, at best.[7] The Federal Arbitration Act ("FAA") governs this case and public policy favors arbitration.[8] *K. W. Brown & Co. v. McCutchen*, 819 So. 2d 977, 979 (Fla. 4th DCA 2002) ("Because the parties' underlying claims in arbitration involve securities, the Federal Arbitration Act applies."). Even if Plaintiff's bias allegations against FINRA had any factual basis or merit (and they do not), the issue is not ripe for review. The FAA provides that bias allegations in arbitration should be litigated by means of a motion to vacate *after* an arbitration award has been issued, not before. *See* Title 9, United States Code, Section 10. A successful motion to vacate requires actual evidence of the arbitrators' partiality or corruption, and not mere unsupported speculation such as Plaintiff proffers here. *See Johnson v. Directory Assistants, Inc.*, 797 F.3d 1294, 1299 (11th Cir. 2015) (FAA requires "evident partiality"). In any event, Plaintiff's bias allegations are, at a minimum, premature.

Moreover, courts considering similar arguments regarding FINRA's purported bias made by other MMTLP shareholders have been squarely rejected as factually and legally baseless, and those courts have compelled arbitration. *See, e.g.*, *Park v. E*TRADE Fin. Corp. Servs., Inc.,* No. 2:23-CV-69-RWS, 2023 WL 11779917 (N.D. Ga. July 25, 2023) ("Plaintiff failed to put forth

---

[7] FINRA adopts and incorporates by reference the arguments made by TradeStation in its motion to compel on this issue. TradeStation's Motion to Compel at 9-11 [ECF No. 29].

[8] The FAA embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24- 25 (1983); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) (by enacting Section 2 of the FAA, "Congress has thus mandated the enforcement of arbitration agreements."); *see also Weeks v. Harden Mfg. Corp.,* 291 F.3d 1307, 1312 (11th Cir. 2002) ("[A]rbitration agreements to resolve disputes between parties have now received near universal approval."); *Berti v. UBS Fin.* No. 2:11-CV-478-FTM-DNF, 2012 WL 5381969, at *6 (M.D. Fla. Nov. 1, 2012) ("Congress mandated a federal policy which favors arbitration agreements.").

any evidence showing that FINRA is biased against him or will compromise his rights to a fair hearing"); *Hensley v. TD Ameritrade*, 3:23-cv-05159 (W.D. Washington, October 2, 2023) (ECF No. 39). For these reasons, Plaintiff's complaint against FINRA should be dismissed.

### III. FINRA'S REGULATORY IMMUNITY REQUIRES DISMISSAL

#### A. Plaintiff's Effort to Avoid Its Arbitration Obligation Undermines FINRA's Absolute Regulatory Immunity.

In its opposition brief, Plaintiff asserts that FINRA is named as a nominal defendant in this case "because FINRA has a technical connection to the dispute between Plaintiff and TradeStation, being named as the mandatory, presumptively biased arbitrator pursuant to the parties Agreements ***and*** FINRA's regulatory activities relating to MMTLP is the nexus from which the dispute between Plaintiff and TradeStation stems." Opp. at 1-2 (emphasis added). Since Plaintiff admits that it cannot state a claim for relief against FINRA for its regulatory activities because "FINRA enjoys immunity from liability for actions taken in its role as a market regulator," and FINRA need not participate in this litigation for the Court to afford full relief, *see id.* at 16, there is no legitimate reason for FINRA's presence in the litigation. It appears that Plaintiff's motive for naming FINRA as a nominal defendant is to improperly avoid its mandatory arbitration agreement with defendant TradeStation. Under such circumstances, naming FINRA undermines FINRA's regulatory immunity.

It is well-established that FINRA's immunity protects FINRA from all burdens of litigation for conduct falling within the scope of its regulatory activities. *See In re Facebook, Inc. IPO and Secs. and Derivative Litig.,* 986 F. Supp. 2d 428, 448 (S.D.N.Y. 2013) ("SRO immunity provides protection not only from liability, but also from the burdens of litigation, including discovery, and should be 'resolved at the earliest stage of litigation.'"); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 685 (2009); *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985);

*D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir.), *cert. denied*, 534 U.S. 1066 (2001) (SRO is immune "from suit for conduct falling within the scope of [its] regulatory and general oversight functions").[9]  Here, in its opposition, all of the misconduct Plaintiff alleges FINRA engaged in is conduct that other courts have already determined is regulatory conduct to which absolute immunity applies.  *See Tawil v. FINRA,* No. 4:22cv440-RH-MAF, 2023 WL 4353179 at *1 (N.D. Fla. May 24, 2023); *Park v. Fin. Indus. Regul. Auth., Inc.*, No. 2:23-CV-69-RWS, 2023 WL 11795601 at *3-6 (N.D. Ga. Sept. 25, 2023).  Indeed, Plaintiff admits that it cannot pursue a claim against FINRA for its regulatory activities.  Opp. at 16 ("Due to this immunity, Plaintiff does not, and cannot allege any cause of action or theory of liability against FINRA and cannot name FINRA as a party defendant to this action.")

Therefore, requiring FINRA to participate in this proceeding as a nominal defendant, when Plaintiff concedes FINRA is not necessary to obtain relief, would undermine FINRA's regulatory immunity and would impose a substantial, unnecessary, and improper burden on FINRA.  The Court should therefore dismiss the complaint against FINRA.

### B. Plaintiff's Assertion That FINRA's Participation in This Case is Optional is Disingenuous.

Plaintiff contends that if the "motion to dismiss is denied, FINRA's further participation in this action would be entirely optional." Opp. at 16.  Plaintiff cites no authority for its proposition, and there is no procedure for exempting nominal defendants from litigation obligations applicable to other defendants, such as initial disclosures, attending hearings and depositions, and responding to discovery.  In fact, as FINRA pointed out in its motion to dismiss, Plaintiff is represented by the same law firm that unsuccessfully sought pre-suit discovery from FINRA in another jurisdiction based on similar conclusory allegations.  *See* Motion to Dismiss at

---

[9] *See generally* Motion to Dismiss at 11-13.

9-10 & n.11 (discussing *Khorassani v. FINRA,* 223 A.D.3d 589, 590 (N.Y. App. Div. 1st Dept 2024)). FINRA is therefore skeptical that Plaintiff is being forthright in its suggestion that FINRA's participation is "optional," and respectfully suggests that the Court should view Plaintiff's representation with substantial skepticism as well.

**IV.   PLAINTIFF FAILED TO ESTABLISH PERSONAL JURISDICTION**

The Court's jurisdictional analysis must be based upon consideration of FINRA's alleged Florida actions and whether the claim at issue arises from those actions. *See* Fla. Stat. § 48.193(1)(a)(1). In addition to the fact that the complaint states no claim against FINRA to analyze for personal jurisdiction purposes, Plaintiff's and TradeStation's connections to Florida are irrelevant to the analysis as well. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 286 & 289-90 (2014) (neither "random, fortuitous, or attenuated contacts [defendant] makes by interacting with other persons affiliated with the [s]tate" nor "mere injury to a forum resident" are sufficient connections to the forum for personal jurisdiction to comport with due process) (citation omitted). Plaintiff has failed to allege any nexus between FINRA's regulatory activities related to MMTLP and FINRA's activities in Florida – nor could it because the regulatory activities with which Plaintiff takes issue do not occur in FINRA's Florida office. Moreover, the mere existence of an office in Florida is insufficient to establish personal jurisdiction. *See* Motion to Dismiss at 14.

Plaintiff's allegations regarding TradeStation's compliance officer Ms. Brinkerhoff's participation on a FINRA advisory committee (Opp. at 14-15) are similarly unavailing and do not establish jurisdiction over FINRA in this Court. First, Ms. Brinkerhoff is not a FINRA employee or agent, and only FINRA's Florida conduct is relevant to the jurisdictional analysis. Secondly, there has been no allegation – nor could there be – that Ms. Brinkerhoff participated in any way, shape, or form in the regulatory activities related to MMTLP.

9

Accordingly, Plaintiff has failed to establish this Court's personal jurisdiction over FINRA, and the complaint should be dismissed.[10]

## CONCLUSION

For the reasons stated herein, FINRA respectfully requests that the Court dismiss the complaint as to FINRA with prejudice and grant such other and further relief to which FINRA may be entitled.

Respectfully submitted,

*/s/David S. Mandel*
David S. Mandel
FBN 38040
**MANDEL & MANDEL LLP**
169 East Flagler Street, Suite 1224
Miami, FL 33131
Telephone: (305) 374-7771
dsm@mandel.law

*Counsel for Defendant,*
*Financial Industry Regulatory Authority, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on August 14, 2024, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*David S. Mandel*

---

[10] Plaintiff's opposition further concedes that Plaintiff has no intention of amending the complaint (*see* Opp. p. 19) so dismissal with prejudice as to FINRA, without any granting of leave to amend, is appropriate at this time.

10