IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-60891-Civ-AHS

INTER-COASTAL WATERWAYS, LLC,

      **Plaintiff,**

v.

TRADESTATION SECURITIES, INC.,
and DOE DEFENDANTS 1-10,

      **Defendants,**

      and

FINANCIAL INDUSTRY REGULATORY
AUTHORITY, INC.
      **Nominal Defendant.**
_____/

**DEFENDANT TRADESTATION SECURITIES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND FOR STAY OF PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW [ECF NO. 29]**

   Defendant TradeStation Securities, Inc. ("TradeStation") files this Reply in Support of its Motion to Compel Arbitration and for Stay of Proceedings [ECF No. 29] ("Motion") and incorporated memorandum of law. TradeStation seeks an order, under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., compelling Plaintiff Inter-Coastal Waterways, LLC ("Plaintiff"), to arbitrate its claims against TradeStation, and staying this action as to TradeStation pending completion of arbitration according to the express terms of the binding arbitration agreement between the parties.

**PRELIMINARY STATEMENT**

   Plaintiff admits that it executed binding agreements to arbitrate disputes with TradeStation (i) relating to its self-directed brokerage Account and (ii) arising out of the Customer Account Agreement and Lending Agreement (sometimes, collectively referred to herein as the "Agreements"). Plaintiff also admits that this dispute with TradeStation is about transactions in Plaintiff's TradeStation Account, and the duties TradeStation purportedly owed to Plaintiff under the Customer Account Agreement and Lending Agreement, and allegedly breached. For purposes

of TradeStation's Motion, Plaintiff's admissions end the analysis. Plaintiff's claims must be compelled to the arbitration forum freely chosen by the parties -- FINRA Dispute Resolution.

Plaintiff instead asks this Court to upend the Federal Arbitration Act and decades of precedent compelling securities arbitration disputes to FINRA Dispute Resolution, a reputable and highly regulated arbitration forum, based on nothing more than bald speculation and illusory claims of bias that have not yet happened, and which are not likely to ever happen. What Plaintiff seeks is to disregard the well-established presumption in favor of arbitration, and the generally accepted principle that the dispute will be heard by competent, conscientious and impartial arbitrators. The Federal Arbitration Act is clear: Plaintiff's remedy, if any, is vacatur of the arbitration award, but only after the dispute is submitted to arbitration under the parties' agreements, and only if Plaintiff can establish a basis for vacatur under 9 U.S.C. §10(a).

## ARGUMENT

### A. There is a Valid Agreement to Arbitrate and the Dispute is Within the Scope of the Agreement.

The Federal Arbitration Act ("FAA") expresses a strong preference in favor of arbitration to resolve disputes and requires that courts "rigorously enforce agreements to arbitrate."[1] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985). "Courts must construe arbitration clauses generously, resolving all doubt in favor of arbitration." *Sanchez v. J.P. Morgan Chase Bank, N.A.,* No. 14-20468-CIV-MORE, 2014 U.S. Dist. LEXIS 113608, at *9 (S.D. Fla. Aug. 13, 2014). "So long as a dispute touches on a matter covered by the arbitration clause, it must be arbitrated." *Id.* (*citing In re Managed Care Litig.*, No. 00-MD-1334, 2003 U.S. Dist. LEXIS 23035, 2003 WL 22410373, at *3 (S.D. Fla. Sept. 15, 2003) ("If Providers' allegations 'touch matters' covered by the relevant arbitration agreements, then those claims must be arbitrated, irrespective of how the allegations are labeled.")). "[C]onsistent with the presumption in favor of arbitration, a dispute must be arbitrated unless there is 'positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* at *10 (citations omitted).

Plaintiff concedes "that an agreement to arbitrate before FINRA was entered between the parties." [ECF No. 39 at p. 18]. Plaintiff nevertheless opposes the Motion arguing that this dispute

---

[1] Plaintiff does not dispute that the FAA applies to the arbitration provisions at issue. [ECF No. 39 at pp. 19-20 of 27].

is outside the scope of the arbitration provisions because the specific alleged misconduct was not "foreseeable" or "contemplated" by the parties at the time the Agreements were made.

Plaintiff's foreseeability analysis is inapplicable because it is derived from case law interpreting narrower arbitration provisions than those at issue in the Agreements. *Integrated Sec. Servs. v. Skidata, Inc.,* 609 F. Supp. 2d 1323, 1325 (S.D. Fla. 2009) ("This discussion takes place in the context of a class of arbitration agreements that use similar language, such as 'arising from,' arising under,' 'pursuant to,' and 'arising during' the contract in question… [T]he Eleventh Circuit even recognized that this test would not apply to language as broad as that which exists in the Agreement in the instant action.") (citing *Hemispherx Biopharma v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 n. 16 (11th Cir. 2008)). The foreseeability analysis does not apply where, as here, the arbitration clauses do not limit arbitration to claims arising out of the parties' contract, alone. *See Hemispherx Biopharma*, 553 F.3d at 1367; *see e.g.*, *Foley v. Morgan Stanley & Co.*, No. 11-CV-60348, 2011 U.S. Dist. LEXIS 173336, at *10 (S.D. Fla. Mar. 28, 2011) (finding the arbitration language covering "*[a]ny controversy or claim* arising out of *or relating to* (i) your employment by Morgan Stanley . . . or (ii) *this Agreement* (or its breach), will be settled by arbitration . . ." was sufficiently broad to avoid application of the foreseeability test) (emphasis in original)); *Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P.*, 670 F. Supp. 2d 1350, 1355 (S.D. Fla. 2009) (finding that an arbitration clause covering "**[a]ny dispute between the parties** relating to the execution, interpretation, existence, validity, performance, termination, liquidation **and other aspects** of the Agreement," was "broad") (emphasis added).

Here, the arbitration provisions are broader and also encompass "any and all controversies, claims or disputes related to your Account, the Services … which may arise between you and TradeStation Securities[.]"  Plaintiff's admission that the "foundation for Plaintiff's action against TradeStation stems from its interest in the MMTLP shares it fully-purchased through its TradeStation Account" [ECF No. 39 at p. 18] definitively resolves this inquiry, and Plaintiff's claims are well within the scope of the arbitration provisions in the Agreements. *Doe v. Princess Cruise Lines, Ltd.,* 696 F. Supp. 2d 1282, 1288 (S.D. Fla. 2010) ("When deciding whether a claim falls within the scope of an arbitration agreement, courts focus on factual allegations in the complaint rather than the legal causes of action asserted.").

Even under the narrow foreseeability test,[2] Plaintiff's claims against TradeStation still must be arbitrated. Plaintiff's entire claim against TradeStation centers on and is derived from the purported duties owed under the Agreements. *See Hearn v. Comcast Cable Commc'ns., LLC*, 992 F.3d 1209, 1213 (11th Cir. 2021) ("[T]here must be 'some direct relationship between the dispute and the performance of duties specified by the contract' in order to find that the dispute arises out of, relates to, or is connected to the underlying agreement."). Indeed, Plaintiff characterizes this action against TradeStation as one "for breach of contract relating to Plaintiff's Customer Account Agreement and TradeStation's Master Lending Agreement" in its filings with this Court. [ECF No. 33 at p. 6]. Plaintiff's claims against TradeStation clearly "touch matters" covered by the arbitration provisions and must be compelled to arbitration.

### B. **Plaintiff Improperly Relies on the Standard for *Post*-Arbitration Award Relief.**

Plaintiff's Opposition incorrectly relies on the FAA's "evident partiality" standard as a basis to **avoid** enforcement of the arbitration provisions. 9 U.S.C. § 10(a)(2). Rather, that section of the FAA applies only to post-arbitration awards, **after** the underlying arbitration has concluded. "[T]he section of the FAA cited by Plaintiff, § 10(a), provides the grounds for vacating an arbitration award, not for avoiding arbitration altogether." *Inetianbor v. CashCall, Inc.,* No. 13-60066-CIV, 2013 U.S. Dist. LEXIS 86842, at *8-9 (S.D. Fla. June 20, 2013). "[P]laintiff's bias argument is not relevant to whether arbitration was properly compelled." *Id.* "[T]his argument is more properly raised on a motion to confirm, modify, or vacate an award after the parties have completed arbitration." *Id.* Indeed, "it is **well-established that 'reviews [of an arbitrator's alleged bias] are confined under the [FAA] to judicial decisions to confirm, modify, or vacate an arbitration award *after* a final arbitration decision has been made**.'" *Id.* (alteration in original) (bold emphasis added)*; Peleus Ins. Co. v. Edgewater Beach Resort Cmty. Ass'n, Inc.,* No. 5:23-cv-141-AW-MJF, 2023 U.S. Dist. LEXIS 238057, at *3 (N.D. Fla. Sep. 19, 2023) ("If an arbitrator's bias affects a final arbitration award, the aggrieved party may raise the issue then.").

Even assuming it were appropriate to apply the "evident partiality" standard here, which it is not, Plaintiff's arguments would fail due to the pure speculation that some unknown and

---

[2] "[I]f the defendant could have been engaged in the allegedly tortious actions even if it had no contractual relationship with the plaintiff, then the dispute is not an immediate, foreseeable result of the performance of the contractual duties' and, thus, the claims are not arbitrable." *Integrated Sec. Servs.,* 609 F. Supp. 2d at 1325.

4

uncertain arbitrators are somehow biased. That is an exception standard that is impossible to prove **before** an arbitration has even been filed, and cannot be upheld here to avoid the contractually agreed arbitration. *See Torres v. Morgan Stanley Smith Barney, LLC,* 839 F. App'x 328, 331 (11th Cir. 2020) ("[T]he evident partiality exception must be strictly construed . . . . The mere appearance of bias or partiality is not enough to set aside an arbitration award. Instead, the alleged partiality must be direct, definite and capable of demonstration rather than remote, uncertain and speculative.") (citations omitted).

Plaintiff argues that this Court should not enforce the admittedly valid agreements to arbitrate between Plaintiff and TradeStation because FINRA is somehow unable to fairly administer the arbitration process due to some illusory bias arising from its regulatory activities, and as a result any potential, unknown arbitrator may or will also be biased.

As cited and extensively discussed in the Motion, other District Courts have considered and rejected similar arguments when made by other MMTLP shareholders (like Plaintiff here) seeking to avoid arbitration before FINRA Dispute Resolution. *See, e.g. Park v. E*Trade Fin. Corp. Servs., Inc.,* Civil Action No. 2:23-CV-69-RWS, 2023 U.S. Dist. LEXIS 238077, at *23 (N.D. Ga. July 25, 2023); *Hofman v. Fid. Brokerage Servs., LLC*, No. 2:23-cv-00881-MCS-PVC, 2023 U.S. Dist. LEXIS 81166, at *8 (C.D. Cal. May 8, 2023); *see also* Order Granting Defs.' Mot. to Dismiss and to Compel Arb., *Hensley v. TD Ameritrade, et al.*, 23-cv-05159 (W.D. Wash. Oct. 2, 2023), ECF No. 39. Tellingly, Plaintiff does not even attempt to distinguish them in its Opposition.

These District Courts, as well as many others, have also broadly analyzed FINRA's Code of Arbitration Procedure and have consistently found sufficient safeguards exist to ensure a fair hearing. *Park*, 2023 U.S. Dist. LEXIS 238077, at *23 (N.D. Ga. July 25, 2023) ("FINRA also has several safeguards in place to ensure that Plaintiff receives a fair hearing … Plaintiff can also take steps to protect himself during the arbitration process."); Order Granting Defs.' Mot. to Dismiss and to Compel Arb. at 11-12, *Hensley v. TD Ameritrade, et al.*, 23-cv-05159 (W.D. Wash. Oct. 2, 2023), ECF No. 39 ("FINRA will not actually run the arbitration. Instead, FINRA's code provides that the parties to the panel both vote to choose who will arbitrate their dispute. These arbitrators are independent and any party may ask an arbitrator to recuse themselves for 'good cause.'") (internal citations omitted); *Flowers v. Wells Fargo Advisors, LLC,* No. 7:12-CV-00052-BR, 2013 U.S. Dist. LEXIS 21323, at *8-9 (E.D.N.C. Jan. 30, 2013) ("[T]he court disagrees with plaintiff's

argument that the FINRA rules pertaining to discovery and the selection of arbitrators make the arbitration agreement so one-sided as to be unconscionable."); *Johannsen v. Morgan Stanley Credit Corp.,* No. 2:11-cv-01516-MCE-KJN, 2012 U.S. Dist. LEXIS 5367, at *12 (E.D. Cal. Jan. 10, 2012) ("Courts have long found that FINRA rules for arbitrating disputes between brokerage firms and their customers are not unconscionable.").

There is no evidence that the FINRA Code of Arbitration Procedure is any different when the allegations in the underlying arbitration also involve FINRA acting in its regulatory capacity – because it is not. In any event, Plaintiff's claim is based on an erroneous characterization of FINRA's distinct and independent functions as a regulator and as an administrator of its neutral arbitration forum. *See, generally,* FINRA's Reply to Motion to Dismiss [ECF No. 38] and Response to Motion to Disqualify [ECF No. 43].

FINRA has a limited role in the administration of the arbitration forum. FINRA Dispute Resolution Services ("FINRA DRS") "sets hearing dates and locations, appoints arbitrators (who are not FINRA employees) selected by the parties, maintains the arbitration file, processes pleadings, motions, and discovery requests, drafts awards and other orders with arbitrator direction, and transmits documents between the parties and arbitrators. FINRA DRS, however, has no role in the Panel's substantive decisions or awards." *Id.*[3]

Plaintiff cannot now avoid the arbitration agreement by complaining about FINRA's role administering the dispute resolution forum chosen by the parties. *Flores v. NFL*, No. 22-CV-0871 (VEC), 2023 U.S. Dist. LEXIS 127911, at *17 (S.D.N.Y. July 25, 2023) ("[A]rbitration is a matter of contract, and consequently, the parties to an arbitration can ask for no more impartiality than inheres in the method they have chosen.") (quoting *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n,* 820 F.3d 527, 548 (2d Cir. 2016) (rejecting argument that the NFL Commissioner cannot fairly adjudicate the propriety of his own conduct even when he acts as the

---

[3] This is also true of the alleged "conflicts of interest" argued in the Opposition resulting from a former TradeStation employee voluntarily serving, uncompensated, on a committee involved with regulatory matters at FINRA, with absolutely nothing to do with the arbitration process or administration. *Freedom Inv'rs Corp. v. Kahal Shomrei Hadath*, 2012 U.S. Dist. LEXIS 15129, at *12 (S.D.N.Y. Feb. 7, 2012) ("Blumenschein's service on FINRA's Board of Governors is insufficient to meet the objective test for assessing bias. [Plaintiff] has not made any showing that an individual member of the FINRA Board of Governors, or indeed the Board of Governors as a whole, has any influence over the selection of FINRA DR arbitrators, their compensation, or their assignment to panels."); *see also Pershing LLC v. Kiebach*, No. 14-2549 REF: ALL, 2017 U.S. Dist. LEXIS 77208, at *23 (E.D. La. May 22, 2017).

sole arbitrator)); *see also Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 18-13452, 2021 U.S. App. LEXIS 32601, 2021 WL 5074465, at *12 (11th Cir. 2021) (holding that because the plaintiff "agreed to a method of arbitration with inherent partiality" it was bound to the results of the arbitration).

In other words, Plaintiff's attempt to avoid the arbitration agreements based on an illusory and as of yet "potential," unrealized arbitrator bias is without factual or legal support and is also in direct contravention of the FAA. *See Flores*, 2023 U.S. Dist. LEXIS 127911, at *20 ("**Plaintiffs, in essence, ask the Court to fashion a specific rule out of whole cloth to protect them from potential arbitrator bias that may never manifest itself. To do so would be in direct violation of the FAA's admonition against carving out rules disfavoring the enforcement of arbitration agreements from generally applicable contract law**.") (emphasis added) (citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 30, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) ("[W]e decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators.") (addressing an arbitration clause that called for arbitration in the NYSE arbitration forum, a predecessor to FINRA with similar rules and processes)); *Boddie v. Comcast of Willow Grove*, No. 1:21-cv-20740-NLH-SAK, 2023 U.S. Dist. LEXIS 29144, at *13 (D.N.J. Feb. 22, 2023) ("**The Supreme Court has rejected arguments of an unfair or biased arbitration forum**[.]") (emphasis added) (citing *Gilmer*, 500 U.S. at 30); *Cristo v. United States SEC,* No. 19cv1910-GPC(MDD), 2020 U.S. Dist. LEXIS 127219, at *14-15 (S.D. Cal. July 17, 2020) ("Any alleged bias on the part of FINRA's arbitrators had not yet produced any adverse consequences[.] Thus, the court concluded that the plaintiffs' claim was not ripe for review and was dismissed.").

### C. FINRA's Limited Discovery Is Not A Basis To Avoid Enforcement of the Arbitration Provisions

Plaintiff argues that the arbitration provisions are not enforceable because discovery under FINRA's Code of Arbitration Procedure is more "limited" than the Federal Rules of Civil Procedure. This argument is legally unsupportable. *Herrera v. W. Flagler Assocs.,* No. 17-20872-CIV, 2017 U.S. Dist. LEXIS 229567, at *16 (S.D. Fla. Apr. 5, 2017) ("Discovery limitations promote the goals of the FAA, and such limitations are rarely grounds for avoiding an arbitration agreement."). Indeed, Plaintiff's argument about discovery available in arbitration versus

discovery in court is one rejected by the Eleventh Circuit nearly 40 years ago. *See Suarez-Valdes v. Shearson Lehman/American Express, Inc.,* 858 F. 2d 648 (11th Cir. 1988) (rules applicable in court do not apply in arbitration).

Courts have specifically enforced arbitration provisions subject to FINRA's Code of Arbitration Procedure and discovery rules. *Flowers*, 2013 U.S. Dist. LEXIS 21323, at *8-9 ("[T]he court disagrees with plaintiff's argument that the FINRA rules pertaining to discovery and the selection of arbitrators make the arbitration agreement so one-sided as to be unconscionable.") (collecting cases); *Johannsen*, 2012 U.S. Dist. LEXIS 5367, at *12 ("Courts have long found that FINRA (as the successor to NASD and NYSE) rules for arbitrating disputes between brokerage firms and their customers are not unconscionable. Therefore, Plaintiffs' objection to arbitration pursuant to FINRA is rejected."); *Simmons v. Morgan Stanley Smith Barney, LLC*, 872 F. Supp. 2d 1002, 1017 (S.D. Cal. 2012) ("[T]he limitations on discovery provided by FINRA are not unconscionable.").

Plaintiff's primary complaint seems to be that control over discovery in arbitration is in the arbitrator's "discretion" and not any outright prohibition under FINRA rules. *See* Opposition at pp. 23 of 27 [ECF No. 39]. However, that is not a legally recognized defense to arbitration. To the contrary, that is precisely what the parties contracted for.[4] The appropriate remedy, if any, is vacatur after an award has been issued and there is some proof. 9 U.S.C. § 10(a)(3). To ask this Court to reject valid arbitration agreements based on unfounded speculation of what a future arbitrator may do in a hypothetical discovery dispute is prohibited by the FAA. *See Flores*, 2023 U.S. Dist. LEXIS 127911, at *20.[5]

---

[4] The Customer Agreement explicitly advised Plaintiff in conspicuous text, "The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings." [ECF No. 1-9 pp. 15 of 33].

[5] Plaintiff also argues that FINRA's immunity to suit, which has been asserted in this action, somehow invalidates the arbitration agreements. Nevertheless, even assuming it was relevant to this Court's inquiry, which it is not, Plaintiff has no idea what an arbitrator will rule in such a hypothetical discovery dispute, and baseless speculation is not a valid basis to avoid agreements to arbitrate. If Plaintiff believes it is prejudiced by an arbitrator's ruling, the FAA provides the vehicle to obtain relief after the award has been issued. *See* 9 U.S.C. § 10(a)(3).

### D. Arbitrators' Receipt of Compensation From the Forum Does Not Invalidate Arbitration Provisions.

Plaintiff argues that the arbitration provisions are not enforceable because FINRA arbitrators, who are independent contractors, will have an "implicit bias" towards FINRA stemming from their "employment" with FINRA and the fact that they are compensated by FINRA. Plaintiff's argument has no merit.

It is well established that the mere fact that arbitrators are paid for their service on an arbitration panel does not establish any bias or void an arbitration agreement. *Bentley v. Van Michael Salon*, No. 1:19-cv-05236-TWT-AJB, 2020 U.S. Dist. LEXIS 256079, at *30 (N.D. Ga. Oct. 29, 2020) ("Plaintiff does not point to any authority holding that an arbitration agreement is voidable simply . . . because the drafter assumed responsibility for most or all of the arbitration costs—and the Court knows of none. Rather, **the Court's own research reveals that numerous courts have held the opposite**.") (emphasis added) (citing *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1235 (10th Cir. 1999) ("there are numerous other protections in place that help to prevent arbitrator bias, such as professional and ethical standards")).

These cases recognize the obvious fact that an arbitrator's compensation is not contingent on the outcome. *Dominick & Dominick, Inc. v. Inv'r Servs. & Sav. Corp.*, No. 86 Civ. 7265 (MGC), 1991 U.S. Dist. LEXIS 9960, at *6-7 (S.D.N.Y. July 22, 1991) ("[T]he arbitrators would have been paid regardless of the result[,] and there is no basis for vacatur of the award."); *Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co., Inc.*, 698 F. Supp. 504, 518 (S.D.N.Y. 1988) ("Even if it were established that the forum had some sort of interest in the outcome of the arbitration, the leap to the conclusion that the arbitrators would necessarily be biased is . . . too tenuous to enjoin an arbitration."). As such, Plaintiff's argument is again nothing more than baseless speculation, which has been consistently rejected by the courts.

### CONCLUSION

Defendant TradeStation Securities, Inc. respectfully requests the Court to enter an order compelling arbitration of this dispute and staying all further proceedings in this action, including discovery, as to TradeStation until arbitration has been completed in accordance with the FAA and the terms of the applicable arbitration agreements by which Plaintiff is bound.

DATED:  September 20, 2024                                  Respectfully submitted,

                                            */s/  Leonel Peraza*
Leonel Peraza, Jr., Esq.
Florida Bar No. 0099089
BRESSLER, AMERY & ROSS, P.C.
515 East Las Olas Blvd., Suite 800
Fort Lauderdale, Florida 33301
Telephone: (954) 499-7979
lperaza@bressler.com
mgomez@bressler.com
*Counsel for Defendant TradeStation Securities, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing was electronically filed on September 20, 2024, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

*/s/  Leonel Peraza*
Leo Peraza, Esq.