## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

INTER-COASTAL WATERWAYS LLC,

                  *Plaintiff,*

    v.

TRADESTATION SECURITIES, INC. and
DOE DEFENDANTS 1-10,

                  *Defendants,*

    and

THE FINANCIAL INDUSTRY
REGULATORY AUTHORITY,

                *Nominal Defendant.*

CIVIL ACTION NO. 0:24-cv-60891-AHS

---

## PLAINTIFF INTER-COASTAL WATERWAYS LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION TO DISQUALIFY THE FINANCIAL INDUSTRY REGULATORY AUTHORITY AND REQUEST FOR AN EVIDENTIARY HEARING

**THE BASILE LAW FIRM P.C.**

Agapija Cruz, Esq.
365 Fifth Avenue S.
Suite 202
Naples, Florida 33472
Tel.:   (239) 232-8400
Fax:   (631) 498-0478
Email: agapija@thebasilelawfirm.com

Joseph F. Rose, Esq. *(admitted Pro Hac Vice)*
390 N. Broadway, Ste. 140
Jericho, New York 11753
Tel.:   (516) 455-1500
Fax:   (631) 498-0478
Email: joe@thebasilelawfirm.com

*Counsel for Plaintiff Inter-Coastal Waterways LLC*

Pursuant to this Court's September 23, 2024 Order, Plaintiff Inter-Coastal Waterways LLC ("Plaintiff" or "Inter-Coastal"), by and through its undersigned counsel, respectfully submits this reply memorandum of law in further support of its Cross-Motion to Disqualify The Financial Industry Regulatory Authority ("FINRA"), ECF 40 ("Cross-Motion"). To the relevant extent, TradeStation Securities, Inc. ("TradeStation") incorporated the substantive arguments raised in its Reply Memorandum in Support of TradeStation's Motion to Compel Arbitration, *see* ECF 46 ("Reply") and, as such, Plaintiff shall respond to the relevant arguments as if they were incorporated into TradeStation's Motion to Strike herein. *See* Reply at 1, FN 1.[1]

## ARGUMENT

I. **PLAINTIFF PRESENTS EVIDENCE OF FINRA'S BIAS AND CONFLICTS OF INTEREST TO WHICH NEITHER TRADESTATION, NOR FINRA ACKNOWLEDGE OR REBUT**

A.   Despite Notice and an Invitation to Respond to the Facts Evidencing FINRA's Bias and Conflict of Interest Set Forth by Plaintiff, FINRA Elected Not to Respond

In its Cross-Motion, Plaintiff presents publicly available facts that support its argument for FINRA's disqualification as an alternative dispute resolution service ("ADR service") for bias and conflict of interest. *See* ECF 40 at 2-9. The causes of action Plaintiff alleges against TradeStation can be directly traced back to specific regulatory actions taken by FINRA: (i) the listing of the MMTLP Shares relying on outdated financials, shares that the company did not authorize to trade, without the input or authorization of Meta Materials' Board of Directors, (ii) the improper, unilateral December 8, 2022 modification of Meta Materials' notice of corporate action and (iii) enactment of the U3 halt of the MMTLP ticker symbol. These facts are supported by first-hand, sworn testimony contained in a declaration by the former Chief Executive Officer of Meta Materials, George Palikaras. Additionally, Plaintiff noted the intimate relationship between

---

[1] "To the extent necessary, TradeStation incorporates herein its substantive arguments raised in its Reply in Support of its Motion to Compel Arbitration and for Stay of Proceedings."

TradeStation and FINRA, in which Nikki Brinkerhoff, TradeStation's Chief Compliance Officer, sat on FINRA's South Regional Committee at the time FINRA enacted the U3 halt. Ironically, despite TradeStation admitting it failed to comply with securities regulations by failing to hold an appropriate amount of physical Next Bridge certificates for its customers, its Chief Compliance Officer was promoted to FINRA's UPC Advisory Committee which "considers issues related to the clearance and settlement of OTC securities transactions," including the enactment of the U3 halt on the MMTLP ticker symbol. TradeStation does not address the conflict of interest created by Ms. Brinkerhoff's position on FINRA's committees.

FINRA has not bothered to dispute[2] any of the facts or allegations of regulatory misconduct contained within the Complaint or Cross-Motion,[3] including its failure, to date, to initiate regulatory enforcement action against its member brokers, including TradeStation, for its member brokers' failure to rectify a total share imbalance of no less than 2.65 million shares by selling or otherwise disposing of short positions prior to the U3 halt. In the only substantive filings it submitted, FINRA, in its motion to dismiss and the associated reply memorandum (ECF 27 and 38), discusses Plaintiff's allegations of regulatory misconduct only in the context of FINRA's "regulatory immunity" in support of dismissal as a nominal party. FINRA claims Plaintiff's allegations of misconduct or "perceived bias" are "speculative and conclusory, at best." *See* ECF 38 at 6. Plaintiff asserts this is a non-substantive response to its claims against TradeStation stemming from FINRA's regulatory misconduct, "at best." Further, although FINRA is a nominal party to this action and Plaintiff invited FINRA to fully participate in this action to address the

---

[2] Plaintiff invited FINRA to participate in addressing the regulatory misconduct presented in support of FINRA's disqualification. However, as it has for the last 20 months, FINRA elected to decline to do so.
[3] Plaintiff respectfully incorporates the allegations of FINRA's regulatory misconduct contained within ECFs 1, 33, and 40 herein. Plaintiff brings to the Court's attention the substantial record of facts and allegations noting FINRA's bias presented to this Court, none of which have been substantively opposed by TradeStation or FINRA.

issues presented to the Court, FINRA refused Plaintiff's invitation, instead taking no position on any allegations of bias or misconduct raised in the Cross-Motion, seemingly waiting for the Court's decision on its motion to dismiss in hopes it will not be required to meaningfully address the regulatory misconduct that lead to the dispute between Plaintiff and TradeStation. *See* ECF 43. FINRA's failure to meaningfully respond to Plaintiff's claims of regulatory misconduct constitutes a forfeiture of FINRA's opportunity to submit such an opposition and, therefore, the Court should deem these allegations of misconduct to be admitted.[4] TradeStation, as an entity separate and distinct from FINRA, cannot speak on behalf of FINRA as to FINRA's regulatory activity or its misconduct.

B.    George Palikaras Provided First-Hand Knowledge of the Events Surrounding the Listing of MMTLP and Those Issues Surrounding the U3 Halt

In support of its Cross-Motion, Plaintiff attached a declaration from Mr. Palikaras, providing this Court with a first-hand account of various communications between Meta Materials and FINRA, communications to which TradeStation was not a party to, nor present when the communications took place. TradeStation does not possess first-hand knowledge of the information contained within Mr. Palikaras' declaration and cannot set forth a good faith argument to discredit the declaration. Instead, rather than directly address Mr. Palikaras' statements *sworn to be true* under the penalty of perjury, TradeStation essentially "scoffed" at the declaration, opting for an ad hominem attack[5] toward Mr. Palikaras' character by attaching the complaint of an SEC enforcement action brought against him as an exhibit to the Reply, an enforcement action *completely irrelevant* to this action (and FINRA's conduct) and the testimony contained in the

---

[4] *See United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022) (noting the Court "may not consider issues intentionally waived by the parties" and "should not consider forfeited issues except in extraordinary circumstances").
[5] *See Campbell v. Boies*, 543 F. Supp. 3d 1334, n.2 (S.D. Fla. 2021) (noting the Court will not "expend valuable judicial resources resolving…in the face of [a] sworn testimony… facts that are immaterial to the issues at hand, conclusory or simply ad hominem attacks").

declaration. This character attack should be seen for what it is, a transparent weaponization of *unadjudicated allegations* by TradeStation to distract this Court from indications of FINRA's bias.

    C.    Plaintiff's Application of the "Evident Partiality" Standard

        In its Reply, TradeStation argues that Plaintiff "incorrectly relies on the FAA's 'evident partiality' standard as a basis to avoid enforcement of the arbitration provisions." Reply at 4. Plaintiff acknowledges, and understands that the plain language of 9 U.S.C. § 10(a)(2) does, indeed, apply to the vacatur of a post-arbitration award for "evident partiality … in the arbitrators." However, due to the extraordinarily unique circumstances surrounding the origin of this dispute, i.e. FINRA's regulatory actions being the nexus from which the dispute stems, Plaintiff disagrees that such standard should be ignored when analyzing the bias of the ADR service itself, *especially* when the dispute arises from actions taken by the entity which operates said ADR service.[6] The FAA does not contain a provision which neatly applies to the issue of the bias of the ADR service itself, nor has there been prior case law which opines on said issue. No rule exists for the disqualification of an ADR service *itself* as it is *exceedingly rare* for a set of circumstances to arise in which the alternative forum where a dispute is to be heard is operated by the same entity whose actions directly lead to that dispute. It is incredibly unlikely that Congress, when drafting the provisions of the FAA, had even considered the possibility that the unconscionable actions of a self-regulatory organization which operates an ADR service *itself* would cause a dispute which would be heard before it. Plaintiff requires this Court to decide the issue of the bias of an ADR service in hearing a dispute stemming from the actions of the operating entity.

---

[6] Plaintiff argues that FINRA's individual arbitrators are de-facto agents of FINRA, as FINRA trains and hires each arbitrator, financially compensates each arbitrator at a rate of $300 per hearing session and FINRA arbitrators are bound to FINRA's direction pursuant to FINRA's Code of Arbitration. *See* ECF 40 at 16. *See Davis v. Legal Servs. Ala., Inc*., 19 F.4th 1261, 1270 (11th Cir. 2021) (holding that "[o]ne can be in an agency relationship with another without being that person's employee") (citing *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013) ("[A]n independent contractor can be an agent. An agent need not be an employee")).

D.     Plaintiff Respectfully Suggests this Court Hold an Evidentiary Hearing on the Issue of FINRA's Bias and Conflicts of Interest as an ADR Service to this Dispute

The crux of the dispute before this Court is TradeStation's loan of Plaintiff's MMTLP Shares which could not be recalled from unidentified borrower(s) to deliver them back to Plaintiff in compliance with its entitlement order due to the U3 halt imposed by FINRA. While Plaintiff has provided this Court with not only publicly available evidence and documentation going directly to the issue of FINRA's bias and conflict of interest, Plaintiff has also provided a first-hand account in support of its claims from Mr. Palikaras. However, TradeStation has failed to address any of the actual facts evidencing bias and conflict of interest proffered by Plaintiff, and, as the law in the 11th Circuit clearly establishes, the failure to do so waives any such defenses in motion practice. Counsel for Plaintiff believes that the serious nature of these claims need to be resolved before this Court through an evidentiary hearing, wherein witnesses can provide testimony so the Court may fully and fairly resolve the unique and novel issues presented in this case. As part of the evidentiary hearing, this Court should compel FINRA to produce its Electronic Blue Sheets and Certified Audit Trail (CAT) data[7] detailing its member brokers' trading history with the MMTLP security to help determine whether FINRA acted solely to protect its member brokers, including TradeStation, from covering no less than 2.65 million open short positions taken prior to the U3 halt taken, in part, through brokers' share lending programs.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court grant Plaintiff's Cross-Motion to disqualify FINRA or, alternatively, schedule an evidentiary hearing, permitting Plaintiff, TradeStation and FINRA to present evidence demonstrating FINRA's bias as an ADR service to the dispute between Plaintiff and TradeStation, or lack thereof.

---

[7] This information had been requested by Congress over a year ago and to which FINRA failed to provide. This data can be reviewed in camera and be subject to a routinely utilized confidentiality protective order.

Respectfully Submitted,

**THE BASILE LAW FIRM P.C.**

*/s/ Agapija Cruz*
Agapija Cruz, Esq.
365 Fifth Avenue S.
Suite 202
Naples, Florida 33472
Tel.:    (239) 232-8400
Fax:    (631) 498-0478
Email:  agapija@thebasilelawfirm.com

Joseph F. Rose, Esq. *(admitted Pro Hac Vice)*
390 N. Broadway, Ste. 140
Jericho, New York 11753
Tel.:    (516) 455-1500
Fax:    (631) 498-0478
Email:  joe@thebasilelawfirm.com

*Counsel for Plaintiff Inter-Coastal Waterways LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of September 2024, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

Respectfully Submitted,

*/s/ Agapija Cruz*